NATHAN H. BORNBAUM, administrator, *vs.* THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED.

SAME *vs.* SAME.

Suffolk. February 5, 1942. — March 31, 1942.

Present: FIELD, C.J., QUA, COX, & RONAN, JJ.

*Insurance,* Motor vehicle liability. *Executor and Administrator,* Decedent's insurance. *Words,* "Legal representatives."

A policy of compulsory motor vehicle liability insurance did not provide indemnity to the administrator of the insured's estate against a judgment recovered against him as administrator for personal in-

juries arising from operation of the insured vehicle by him in 1935 after the death of the insured and before he was appointed administrator.

TWO ACTIONS OF CONTRACT. Writs in the Superior Court dated April 9, 1938.

The actions were heard by *Hurley*, J.

*D. H. Fulton*, for the plaintiff.

*R. B. Coulter*, for the defendant.

COX, J. These are two actions of contract brought to recover upon a policy of compulsory motor vehicle liability insurance issued on February 26, 1935, by the defendant to Morry Bornbaum, who died on April 29, 1935. On June 3, 1935, the automobile referred to in the policy was involved in an accident while being driven by the plaintiff, who was appointed administrator of the estate of Morry Bornbaum on December 31, 1935. Two actions of tort were brought by writs dated January 4, 1936, against the plaintiff in the cases at bar, as administrator, to recover damages arising out of this accident. On January 29, 1936, he was defaulted, damages were assessed, and judgment was entered for the plaintiff in each tort case. The plaintiff in the cases at bar makes no claim that there is any estoppel against the defendant by reason of its conduct in connection with these two actions of tort in which judgments were entered. The defendant, prior to June 3, 1935, had no knowledge of the death of Morry Bornbaum, had taken no steps to cancel the policy prior to that date, and the premium that was due on the policy was paid in full. The cases at bar were tried by a judge of the Superior Court sitting without jury, who made findings and rulings and found for the defendant in each case. The plaintiff's exceptions are to the denial of some of his requests for rulings, to the admission of evidence, and to certain rulings of the judge.

The important question in the cases arises from the following provision in the policy: "VI. — Statutory Provisions . . . (4) If the death . . . of the Assured shall occur within the Policy period, the Policy during the unexpired portion of such period shall cover the legal representa-

tives of the Assured." This provision appears in G. L. (Ter. Ed.) c. 175, § 113A (6). (See, now, St. 1936, c. 272.) The plaintiff contends, in substance, that the policy of insurance, which had not been cancelled prior to June 3, 1935, the date of the accident, was in full force and effect on that date; that the appointment of the plaintiff as administrator on December 31, 1935, related back to the date of the death of Morry Bornbaum on April 29, 1935, and that the recovery of the two judgments in the tort cases fixed the liability of the defendant to satisfy them.

The policy of insurance, under the title "Statutory Coverage," states that it is to provide insurance in accordance with and as required by St. 1925, c. 346, that is, the compulsory motor vehicle liability insurance law. G. L. (Ter. Ed.) c. 90, §§ 34A–34J, as amended; G. L. (Ter. Ed.) c. 175, §§ 112–113D, as amended. In compliance with said § 113A of said c. 175, the policy obligates the defendant generally to settle or defend against claims resulting from "liability imposed by law upon the Assured and/or any person responsible for the operation of the named Assured's motor vehicle . . . with his express or implied consent to pay damages to others for bodily" and other injuries, and to pay and satisfy judgments rendered against the "Assured if covered . . . and to protect the Assured against the levy of executions issued against the Assured upon the same . . . ."

It goes without saying that the death of the named insured terminated the defendant's obligation to him, as of the date of his death, as to the operation of his automobile thereafter, and, from that date, there could be no operation of the insured's automobile with his express or implied consent. But upon the death of the insured, and during the remaining life of the policy, the "legal representatives of the Assured" were covered.

It has uniformly been held that the ordinary meaning of the words "legal representatives" is "executors and administrators" in the absence of anything to indicate a different meaning. *Commissioner of Corporations & Taxation* v. *Second National Bank of Boston*, 308 Mass. 1, 8, and cases cited. In the case of *Lodge* v. *Weld*, 139 Mass. 499, the

court had occasion to construe the words "legal representatives" as appearing in a statute that contained the words: "without the consent in writing of such person or of his legal representatives." After stating the ordinary meaning of the words in question, the opinion went on to state another familiar rule that, in the construction of statutes, technical words and phrases, and such others as might have acquired a peculiar and appropriate meaning in the law, are to be construed and understood according to such peculiar and appropriate meaning, unless such construction would be inconsistent with the manifest intent of the Legislature, or repugnant to the context of the same statute, and it was held that there was nothing appearing in the statute under consideration to warrant a change of the ordinary meaning of the words. We find nothing, either in the statute involved in the cases at bar where these words appear or in § 34A of said c. 90 to change their ordinary meaning. *Frankel* v. *Allied Mutuals Liability Ins. Co.* 288 Mass. 218, 220. General Laws (Ter. Ed.) c. 90, § 2, as amended by St. 1932, c. 5, provides, among other things, that upon the death of the owner of a motor vehicle, its registration shall be deemed to continue in force as a valid registration until the end of the year, or until the ownership of the motor vehicle is transferred "by the legal representative of the estate of such owner." When said § 2 was amended, as aforesaid, this court had already pointed out, in the case of *Hobbs* v. *Cunningham*, 273 Mass. 529, that, upon a person's death, title to his personal property vests in either the administrator or the executor. (Pages 533–534.) The use of the words "legal representative" in said § 2 indicates that the Legislature clearly had in mind the proper person who would be required to make the transfer, and although we are here dealing with a different statute, nevertheless it relates to the same general subject matter and its language in its setting does not require an extraordinary construction of the words "legal representatives."

We agree with the contention of the plaintiff that, upon the appointment of the administrator in the cases at bar, the appointment related back and that the title to the per-

sonal property vested in the administrator from the date of the decease of the intestate, *Hobbs* v. *Cunningham*, 273 Mass. 529, 533, 534; but we do not agree with the contention that, because of this vesting, the defendant was thereby obligated by the terms of the policy by reason of the accident that took place on June 3, 1935, followed by the judgments that were rendered against the plaintiff. In connection with the vesting of title to the personal estate in the administrator or executor, the case of *Jewett* v. *Smith*, 12 Mass. 309, cited with approval in *Bingham* v. *Commissioner of Corporations & Taxation*, 249 Mass. 79, 82, is to be noticed. In that case judgment had been obtained and execution awarded and delivered to the sheriff before the death of the debtor, but the sheriff had not begun to execute. It was held that he could not. It was said: "The property may be considered in abeyance until administration is granted, and is then vested in the administrator, by relation, from the time of the death." (Page 310.) The point was made that the debtor had ceased to have property in the goods, and that the precept of the sheriff was to take the goods of the debtor. Somewhat by analogy in the cases at bar, the deceased insured no longer had any insurance policy, but by the terms of the policy and in accordance with the statute (§ 113A), his "legal representatives" were covered.

In order to determine the rights and obligations of the parties, it seems necessary to consider parts of several statutes. In order that the insured's motor vehicle could be operated lawfully upon the public ways of this Commonwealth, it had to be registered and also to be insured, and this insurance had to provide indemnity for the insured and any person responsible for the operation of his automobile with his express or implied consent. (Chapter 90, § 34A, as amended.) When the accident occurred that was the basis of the two actions in which judgments were recovered against the plaintiff here, the named insured was dead. There was no "insured's motor vehicle" (c. 90, § 34A) unless, by relation, it belonged to the legal representatives, and no person could be responsible for the operation of the

insured's motor vehicle with his express or implied consent because there were no legal representatives to give consent. The cases at bar differ from the case of *Frankel* v. *Allied Mutuals Liability Ins. Co.* 288 Mass. 218, for in that case no administrator of the deceased automobile owner, who was insured, had ever been appointed. But the language of the opinion in that case is significant. It was there said: "To entitle the operator of an automobile to have the indemnity covered by the policy it must appear that at the time and place of the accident he was driving the car 'with the express or implied consent of such owner.' . . . As the owner was not living when the accident occurred permission could not be given by him to operate the automobile at the time and place of the accident. The permission given by the owner in his lifetime came to an end upon his decease. After his death and at the time of the accident the insured would be 'the legal representatives of the Assured,' who would be his executors or administrators. The operator of the automobile in order to be entitled to indemnity must prove that he comes within the provisions of G. L. (Ter. Ed.) c. 90, § 34A, and was responsible for the operation of the insured's automobile with his express or implied consent. After the death of the insured the operator would have to show he was operating it with the express or implied consent of the person or persons then insured, who would be the legal representative or representatives of the insured, if there were any such to claim that right." (Pages 219–220.) We are of opinion that "legal representatives" of an insured person cannot be covered by his policy of insurance until they actually are his legal representatives, that is, that the statute does not contemplate or mean that the appointment, as in the cases at bar, of a legal representative of an insured person who died before the accident, for the results of which it is sought to hold the insurer responsible, relates back to the date of death of the insured and thereby fixes the liability of the insurer. The fact that the person who was operating the automobile happens to be the one who was appointed administrator is of no consequence.

But the plaintiff contends that the *Frankel* case is also distinguishable from the cases at bar in that there the judgment was against an operator of the automobile, and, he points out, that the motor vehicle liability policy must provide indemnity for, or protection to, the insured "and any person responsible for the operation of the insured's motor vehicle with his express or implied consent" (§ 34A as amended). He also contends that where, as here, the judgment was against the "policy-holder," the issue of consent is of no consequence. It is his contention that, following the death of Morry Bornbaum, the insured was "his Estate" by operation of law. These contentions only serve to raise the main question. It is true that the judgments were against the legal representative of Morry Bornbaum. General Laws (Ter. Ed.) c. 175, § 112, provides, in substance, among other things, that the liability of an insurer, such as the defendant, shall become absolute whenever the loss or damage for which the insured is responsible occurs, and § 113 of said c. 175 provides that upon the recovery of final judgment against any person for loss or damage specified in said § 112, if the judgment debtor was at the accrual of the cause of action insured against liability therefor, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment as provided in G. L. (Ter. Ed.) c. 214, § 3 (10). The liability of the insurer, however, under these two sections is not absolutely fixed whenever the loss or damage occurs, or upon the recovery of a final judgment for loss or damage occasioned by the operation of an automobile that is covered by a compulsory liability policy. The insurer may show, when sued on the policy, or when it is sought to reach and apply the proceeds of the insurance in satisfaction of a judgment, that the cause of action upon which the judgment was entered was not included in its policy of insurance. *Lorando* v. *Gethro*, 228 Mass. 181, 184–186. *Caron* v. *American Motorists Ins. Co.* 277 Mass. 156, 158. *Phillips* v. *Stone*, 297 Mass. 341, 344. *Klefbeck* v. *Dous*, 302 Mass. 383, 385. *Sciaraffa* v. *Debler*, 304 Mass. 240, 242. *Rogan* v. *Liberty Mutual Ins. Co.* 305 Mass. 186, 188.

It is true that the purpose of the compulsory motor vehicle liability insurance law is not to protect the owner or operator alone from loss, but rather it is to provide compensation to persons injured through the operation of the automobile insured by the owner. *Wheeler* v. *O'Connell*, 297 Mass. 549, 553. It is also true that the language of a policy of such insurance should be construed liberally, "to accomplish the humane purpose of the Legislature to protect travellers on the highway injured by motor vehicles." *Dickinson* v. *Great American Indemnity Co.* 296 Mass. 368, 372. But the liability, indemnity for which is required by a compulsory liability insurance policy, is founded on negligence. *Opinion of the Justices*, 271 Mass. 582, 589–590. See *Jenkins* v. *A. G. Tomasello & Son, Inc.* 286 Mass. 180, 185. When the compulsory motor vehicle liability insurance law was first enacted by St. 1925, c. 346, it contained, in § 4, the identical provision that now appears in G. L. (Ter. Ed.) c. 175, § 113A (6), that "if the death . . . of the insured shall occur within the policy period, the policy during the unexpired portion of such period shall cover the legal representatives of the insured." (See now St. 1936, c. 272.) During the life of the insured in the cases at bar, he and persons responsible for the operation of his automobile with his express or implied consent were covered by the policy of insurance that had been issued by the defendant. In accordance with the compulsory motor vehicle insurance law, a certificate of an insurance company showing that the motor vehicle is covered by compulsory insurance is a prerequisite to the registration of a motor vehicle. G. L. (Ter. Ed.) c. 90, § 1A, as amended. (See St. 1925, c. 346, § 1.) The year before the compulsory liability insurance law was first enacted, the Legislature, by St. 1924, c. 427, for the first time provided that on the death of an owner of a motor vehicle, the registration should be deemed to continue in force as a valid registration until the end of the year or until its ownership was transferred by the executor or administrator of the estate of such owner. See now G. L. (Ter. Ed.) c. 90, § 2, as amended by St. 1932, c. 5, which also provides that this

provision is "subject otherwise to all provisions of law applicable generally to registrations of motor vehicles . . . ." Prior to the enactment of said St. 1924, c. 427, it had been held in *Pierce* v. *Hutchinson*, 241 Mass. 557, decided in June, 1922, that from and after the death of an automobile owner, the registration in his name would afford no protection to one operating it. (Page 562.) At least, the effect of said c. 427 was to prevent an automobile from being an outlaw on the highway when operated, if properly registered by its owner who had died in the meantime. Apart from this result, the substantive law of negligence and agency was not affected in any way, and liability for negligence remained as the basis upon which indemnity in the form of a bond or policy of insurance was laid.

We cannot conclude that the Legislature intended by the laws in force in 1935 that negligent operation of an automobile by any one after the death of an insured and before appointment of an administrator or an executor would make the insurer liable. It is true that in such a case the premium would have been paid or obligated for, and it may seem that this fact is significant, but, as we think, it is not controlling. Under the law, there still would have to be an insured person in place of the deceased insured. The law imposed no requirement as to time for the appointment of an administrator or executor. It did not even require an appointment. It left the matter in the hands of those who by law could petition for such an appointment. We cannot think that the Legislature intended that the appointment of an administrator or executor, if and whenever made, would, in a sense, validate the operation of the deceased insured's automobile in the meantime. It would require clear and unmistakable language to lead to this conclusion, and we do not find such language.

About a year after the accident, for the results of which the plaintiff seeks to hold the defendant under the policy issued, the Legislature, by St. 1936, c. 272, amended § 113A of said c. 175, so as to provide, so far as here material, that in case of the death of the insured within the policy period,

the policy shall, pending the appointment of a legal representative of his estate, but not for a period extending beyond ninety days after his death nor in any event beyond the date of expiration of the policy, cover any person having proper temporary custody of the motor vehicle referred to in the policy; and if such a legal representative is appointed within said period of ninety days, the policy shall during the unexpired portion, if any, of the policy period cover such legal representative to the same extent as though he were named as insured in the policy; and if no legal representative is appointed within said period of ninety days the policy, if still in force, shall terminate.

It seems from these provisions that the Legislature not only recognized in the law before it was amended the existence of a hiatus between the time of death of the insured and the possible appointment of the legal representative, but also that it saw fit to provide for an amelioration of the situation to a limited extent only. See *McGilvery* v. *Boston Elevated Railway*, 200 Mass. 551, 555.

It does not appear that the main question involved in these cases has received much attention by the courts. The case of *Collins* v. *Northwest Casualty Co.* 180 Wash. 347, in several particulars seems to bear out the conclusion here reached. See 97 Am. L. R. 1241; 135 Am. L. R. 749, where a very few cases are considered. In *Merchants Mutual Casualty Co.* v. *Egan*, 91 N. H. 368, the court, in connection with its consideration of the form of a liability insurance policy that had been approved by the insurance commissioner, discussed the statute which provides that in the event of death of the insured, the policy, during the unexpired portion of the policy period, will cover the legal representatives of the insured. We do not adopt the conclusion there reached as to the meaning of the words "legal representatives."

We are of opinion that there was no reversible error in the manner in which the trial judge dealt with the plaintiff's requests for rulings that were denied. In the main, they have been covered by what has already been said. Each has been examined. At the oral argument, counsel

for the plaintiff stated that the real issue was presented by request numbered 3, which is to the effect that the judgments in question are against the legal representative of the deceased insured for personal injuries sustained by a person as a result of the operation of the insured motor vehicle on the public highway of the Commonwealth during the policy period and prior to the effective date of any cancellation. The trial judge gave this request with the following additional language: "but while the car was being operated without the express or implied consent of the named assured or his legal representative." The added qualification was not harmful. The cases were tried upon certain agreed facts, but it is difficult to determine from the bill of exceptions just where the agreed facts begin and end. In any event, there appears to have been no dispute as to the judgments, upon what they were based, or that the motor vehicle involved was covered by insurance in that its deceased owner had been, or that no steps had been taken to cancel the policy prior to the accident.

The plaintiff also excepted to the admission in evidence of a writing dated July 6, 1936, signed by him, by the terms of which he, as administrator, purports to ratify and confirm his act as an individual in operating the automobile in question on the date of the accident. It is difficult to see just what real objection the plaintiff could have had to the admission of this document. By law the rights of the parties had already been fixed prior to its date, and the plaintiff, in his representative capacity, could not change them. We are of opinion, however, that the plaintiff was not harmed. It is apparent from the findings and rulings of the trial judge, which are a part of the record, that his decision was based upon grounds in no wise related to the document in question.

The remaining exceptions of the plaintiff are to rulings of the trial judge to the effect that there was no legal representative of the deceased insured at the time of the accident in question, and that the automobile was, therefore, being operated without the express and implied consent of the named insured or his legal representative, and that, not-

withstanding the appointment of the administrator on December 31, 1935, he was, on that day or subsequently, in no position to impose a burden upon the estate by any act of his. Counsel contends that the plaintiff was not attempting to impose a burden upon the estate. In view of what has been said, we are of opinion that the plaintiff was not harmed.

*Exceptions overruled.*