INLAND MUTUAL INSURANCE COMPANY, a body corporate,

v.

Carrie PETERSON, Carroll T. Webb, Rufus Webb, George Webb, Richard L. Gant, Jr., and Mary Wilkins.

Civ. A. No. 8488.

United States District Court
D. Maryland, Civil Division.

Feb. 12, 1957.

Theodore Sherbow, Baltimore, Md. (Sherbow & Sherbow and Edward F. Shea, Jr., Baltimore, Md., on the brief), for plaintiff.

J. Calvin Carney, Baltimore, Md., for Carrie Peterson, Carroll T. Webb, Rufus Webb, and George Webb.

Percy Scherr, Baltimore, Md., for Mary Wilkins.

Joseph Rosenthal and Fred Oken, Baltimore, Md., for Richard L. Gant, Jr.

THOMSEN, Chief Judge.

The motions for summary judgment filed respectively by the plaintiff insurance company and by Mary Wilkins, one of the defendants in this action for a declaratory judgment, present novel issues dealing with the effect of the death of the named insured on an automobile liability policy, which had been certified to the Department of Motor Vehicles as proof of the financial responsibility of the named insured, in order that he might receive a new operator's license and might have registered in his name the automobile which was described in the policy and which was involved in an accident twenty-four days after his death.

### Facts

The essential facts are not disputed.

On July 31, 1952, William Albert Webb was convicted of driving a motor vehicle under the influence of intoxicating liquor. As a result of this conviction, he was required to give and maintain proof of financial responsibility under the provisions of Article 66½, section 116, Annotated Code of Maryland (1951 Ed.), before any new license or renewal of license could be issued to him or any motor vehicle could be registered or re-registered in his name. The policy involved in this case, covering a Buick convertible coupe, was issued to Webb as the named insured, and was certified to the Department of Motor Vehicles by an "SR 22" as proof of William Albert Webb's financial responsibility. The relevant provisions of the policy and of the Maryland statutes will be set out below.

On February 25, 1954, William Albert Webb died intestate, leaving as his next of kin, his mother, the defendant Carrie Peterson. He was also survived by his brothers, the defendants Carroll, Rufus and George Webb. No one qualified as personal representative of William Albert Webb, but his mother took charge of his automobile.

On March 21, 1954, while the automobile was being operated by the defendant Richard L. Gant, Jr., with the permission of Carrie Peterson, it was involved in an accident in Baltimore, as a result of which Mary Wilkins sustained personal injuries.

The insurance company was not notified of the death of William Albert Webb or of the accident of March 21, 1954, until March 24, 1955, when the company received a letter from the attorney for Mary Wilkins. Carrie Peterson states: "I did not notify the automobile insurance company that the accident occurred because I understood the woman was not badly hurt and I thought it wouldn't amount to anything."

After execution of a non-waiver agreement, the insurance company investigated the matter, and on May 12, 1955, notified the defendants, other than Mary Wilkins, that no coverage was afforded them because of their failure to notify the company of the death of William Albert Webb and of the accident.

Thereafter, Mary Wilkins sued the other defendants herein in the Court of

Common Pleas; the insurance company declined to defend that suit, and filed this action, praying a judgment declaring that it is not obligated to defend that suit nor to pay any claims or judgments arising out of the accident of March 21, 1954.

The plaintiff insurance company has moved for summary judgment, arguing that the failure of the defendants, other than Mary Wilkins, to notify it of the death of the named insured within sixty days after February 25, 1954, terminated the policy; that Gant was not an "insured" under the policy, because his use of the automobile was not "with the permission of the insured person named in said policy"; and that the failure of the defendants to give written notice to the insurance company of the accident of March 21, 1954, as soon as practicable, voided any obligation of the company in connection with that accident. Mary Wilkins has also moved for summary judgment, arguing that the certification of a policy to the Department of Motor Vehicles, as proof of financial responsibility of an owner and operator under the Financial Responsibility Law of Maryland, precludes the insurance company from denying liability on such policy under the circumstances set out above.

At a former hearing in this case I ruled that, in view of the deposition of Carrie Peterson, the question whether notice was given by or on behalf of the insured to the company "as soon as practicable" was an issue of fact which should be determined at a trial on the merits. The Court of Appeals of Maryland has adopted the rule that "the insured must give to the insurer a notice of the accident in accordance with the policy's provision where the accident is sufficiently serious to lead a person of ordinary intelligence and prudence to believe that it might give rise to a claim for damages * * *." Lennon v. American Farmers' Mut. Ins. Co., 208 Md. 424, at page 430, 118 A.2d 500, at pages 502, 503. The other questions raised by the motions require a consid-

eration of the policy provisions in the light of the applicable statute, and have been fully and ably briefed by counsel for the insurance company and counsel for Mary Wilkins.

### The Policy

The policy form was the "National Standard Automobile Liability Policy—Non-Assessable—Form No. 8". Its insuring agreements provide coverage for (A) bodily injury liability, and (B) property damage liability. The following provisions are material to this case:

"III *Definition of Insured*

"* * * the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *"

"Conditions

"3. *Financial Responsibility Laws* Coverages A and B

Such insurance as is afforded by this policy for bodily injury liability or property damage liability shall comply with the provisions of the motor vehicle financial responsibility law of any state or province which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use of the automobile during the policy period, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

"12. *Assignment* Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die or be ad-

judged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall, if written notice be given to the company within sixty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2 )under coverages A, B and C [1] subject otherwise to the provisions of Insuring Agreement III, any person having proper temporary custody of the automobile, as an insured, but in no event for a period of more than sixty days after the date of such death or adjudication."

An endorsement on the policy provided coverage for the named insured while operating other automobiles.

The SR 22, Maryland Financial Responsibility Insurance Certificate, filed with the Department of Motor Vehicles read as follows:

"The company * * * hereby certifies that there is in effect * * a motor vehicle liability policy, as defined in Sections 107 to 130 inc., of the Motor Vehicle Law of Maryland, issued by the company to

William Albert Webb 2803 West North Avenue, Baltimore 16, Maryland Policy Number 110730 Effective from 9/5/53 to 9/5/54 * * *

Bodily Injury Liability x Property Damage Liability x applicable with respect to:
1. The motor vehicle described herein

Operator's Policy
1948 Buick Convertible Coupe Serial No. 14844905 * * *
2. Operator's Policy x
Date 9/8/53 Inland Mutual Insurance Co. * * *"

The Statutes
"Annotated Code of Maryland (1951 Ed.), Article 66½:

"116. (Owners and Operators of Motor Vehicles After Certain Convictions.)

\* \* \* \* \*

"(b) The suspensions or revocations hereinbefore required shall remain in effect and the Department shall not issue to any such person any new license or any renewal of license or register or re-register in the name of such person any motor vehicle until permitted under the Motor Vehicle Laws of this State and not then unless and until said person gives proof of his financial responsibility in future.

\* \* \* \* \*

"127. (A Policy Of Insurance As Proof Of Financial Responsibility.)
\* \* \*

"A policy or policies of insurance shall provide insurance, in the name of the person insured, to apply to all motor vehicles owned by the person insured; and in addition thereto shall provide insurance, in the name of the person insured, to apply to any motor vehicle operated by, but not owned by the person insured.

"(A) Such policy of insurance shall meet the requirements enumerated hereunder when:

"(1) It shall designate by explicit description or appropriate reference all motor vehicles to be insured therein;

"(2) It shall specify the name, address and occupation of the person insured;

"(3) It shall extend to insure any person using or legally responsible for the use of any motor vehicle described in the said policy, when such use is with the permission of the insured person named in the said policy;

\* \* \* \* \*

"(5) It shall provide insurance for every insured person on account of legal liability for damages arising

---

1. Coverage C (Cargo) is not involved in this case in any way.

out of the ownership, operation, maintenance or use of any motor vehicle explicitly described or appropriately referred to in the said policy;

"(6) It shall specify the following:

\* \* \* \* \*

"(f) that the liability of the insurance carrier shall become absolute whenever loss or damage included in such policy occurs, and the satisfaction by the insured person of a final judgment for such loss or damage shall not be a condition precedent to the right or obligation of the carrier to make payment on account of such loss or damage; provided that no suit shall be brought against the insurance carrier until thirty (30) days after the entry of a final judgment against the insured person for such loss or damage.

"(B) A policy of insurance offered as proof of financial responsibility under this Article may:

\* \* \* \* \*

"(5) contain any agreement, provision or stipulation not in conflict with or contrary to the provisions required in this Article and not otherwise contrary to law;

\* \* \* \* \*

"(D) No policy of insurance offered as proof of financial responsibility under this Article shall be cancelled, or annulled as respects any loss or damage, by any agreement between the person named in such policy and the insurance carrier after the said insured person has become involved in an accident resulting in such loss or damage and any such cancellation or annulment shall be void.

\* \* \* \* \*

"135. (Restrictions in Operating Motor Vehicles When Proof of Financial Responsibility Has Been Filed.) (a) When proof of financial responsibility is required under Sections 116 and 117 of this Article, and such proof is filed with and accepted by the Department, applying to motor vehicles owned by the person filing the said proof, it shall be unlawful for such person to operate any other motor vehicle within this State, unless or until such other vehicle be specifically designated or appropriately referred to in the proof filed. \* \* \*

"(b) Such operator or chauffeur so restricted may have such restriction removed by filing proof of financial responsibility as required by this Article by means of an operator's policy of insurance, insuring such operator or chauffeur while operating any motor vehicle.

"138. "(Notice Required Before Cancellation or Annulment.) When any form of proof of financial responsibility has been certified to the Department or the Public Service Commission as the case may be, such proof shall not be cancelled or annulled by any party in interest except upon not less than thirty (30) days' notice to the Department or the Public Service Commission as the case may be.

"143. (When Proof May Be Released.) The Department \* \* \* upon request, shall release to the person entitled thereto any and all forms of proof of financial responsibility offered under this Article, when such proof is no longer required by this Article; provided, however, such proof shall not be released when there is outstanding or pending any cause of action or action for damages or unsatisfied judgment against the insured person or persons which creates or may create a legal liability as against such proof. \* \* \* "

### Discussion

█ In the absence of a policy provision or statute to the contrary, a voluntary automobile liability insurance policy is a personal contract which terminates upon the death of the named insured. 97 A.L.R. 1241; 135 A.L.R. 749;

Collins v. Northwest Casualty Co., 180 Wash. 347, 39 P.2d 986; Bornbaum v. Employers' Liability Assurance Co., 311 Mass. 282, 41 N.E.2d 54.

The policy involved in this case, like other standard automobile liability policies issued in 1953, contains the "assignment" clause quoted above, which provides that if "the named insured shall die or be adjudged bankrupt or insolvent within the policy period, this policy, unless cancelled, shall, if written notice be given to the company within sixty days after the date of such death or adjudication, cover (1) the named insured's legal representative as the named insured, and (2) * * * subject otherwise to the provisions of Insuring Agreement III, any person having proper temporary custody of the automobile as an insured, but in no event for a period of more than sixty days after the date of such death or adjudication."

■ Giving such notice to the insurer within the prescribed period is a condition precedent to the continued liability of the insurer; unless the insurer is notified within the sixty day period, there is no liability for any act occurring after the death of the named insured. New Century Casualty Co. v. Chase, D. C.S.D.W.Va., 39 F.Supp. 768. See also Whirry v. State Farm Mutual Automobile Ins. Co., 263 Wis. 322, 57 N.W.2d 330. No such notice was given in this case. Therefore, unless there is something in the Financial Responsibility Law which precludes the operation of this provision, the policy does not provide any coverage to anyone for the accident of March 21, 1954, which occurred after the death of the named insured.

■ Moreover, the "omnibus" clause in the policy provides no coverage for anyone other than the named insured unless that person is using the automobile with the permission of the named insured. It is not contended that Gant was operating the automobile as the result of any permission granted by the named insured before his death; and it has been

generally held that permissive use, within the meaning of the omnibus clause, terminates with the death of the named insured. See e. g. New Century Casualty Co. v. Chase, D.C.W.Va., 39 F.Supp. 768; Appleman, Insurance Law Practice, § 4359. After the death of the named insured, only his administrator or executor has authority under the "assignment" clause to grant permission to use the automobile and so make the driver an additional insured under the omnibus clause. Collins v. Northwest Casualty Co., supra. No "legal representative" for William Albert Webb has ever qualified. Therefore, Gant could not be a person "insured" under the policy, unless the certification of the policy under the Financial Responsibility Law either (a) made the next of kin of the deceased the named insured under the policy with authority to authorize its use by others and so make them additional insureds, or (b) made the insurance company liable to the public for the negligence of anyone operating the automobile before the expiration date of the policy, unless it was cancelled by 30 days' notice to the Department. Of course, if there is such a provision in the law, it takes precedence over the policy provisions. Keystone Mutual Casualty Co. v. Hines, 180 Md. 676, 679, 26 A.2d 761, 762.

In considering both of these problems, we must remember that certification of this policy was required because the named insured had been convicted of drunken driving, not because the vehicle was a commercial vehicle or a taxicab. In the latter situations, it is the vehicle which is important; in this case it was the driver; the policy was both an owner's and operator's policy. See Sec. 135 (a) and (b) and the SR 22.

Art. 66½, sec. 143 provides that all forms of proof of financial responsibility shall be released "when such proof is no longer required by this Article". The Maryland law contains no provision requiring proof of financial responsibility beyond the lifetime of a bad risk. In this respect the Maryland statute is in line with the statutes of most other states.

Only five states require a policy provision extending coverage beyond the death of the named insured. Massachusetts is one of the five states. In Bornbaum v. Employers' Liability Assurance Company, 311 Mass. 282, 41 N.E.2d 54, the accident occurred after the death of the insured, but before the administrator of his estate qualified, some eight months later. The court interpreted strictly the term "legal representative" as used in this statute and held that his operation of the car before he qualified as administrator was not covered by the compulsory policy. A fortiori, he could not have made someone else an additional insured under the policy.

In Merchants Mutual Casualty Co. v. Egan, 91 N.H. 368, 20 A.2d 480, 135 A.L.R. 745, the court held that a policy provision requiring written notice of the death of the named insured within 30 days in order to extend coverage to legal representatives or persons having proper temporary custody was inconsistent with, and must yield to, a statutory provision which extended coverage after such death without any requirement of notice. In the present case, however, as we have seen, there is no Maryland statutory provision requiring that coverage be extended to anyone after the death of the named insured.

The reason for requiring proof of financial responsibility in the instant case was to protect the public against the negligence of an individual, William Albert Webb, who had been convicted of drunken driving. There was no more reason to require a statutory policy covering his automobile after his death than there is to require a statutory policy covering every automobile after the death of its owner. The Maryland statute does not undertake to do this.

█ The "assignment" clause in the policy, set out above, which continued the policy after the death of the named insured only upon a condition precedent, is not inconsistent with the Financial Responsibility Law, and is, therefore, a valid provision under sec. 127(B) (5). The evident purpose of that condition

precedent—that written notice of the death of the named insured be given to the company within sixty days—is, on the one hand, to enable the company to decide whether it wishes to continue on the risk or to cancel the policy, and on the other hand, to give the relatives who have custody of the car sixty days' coverage within which they may have a personal representative appointed, or may make other insurance arrangements. New Century Casualty Co. v. Chase, supra. But, whatever its purpose, it was a valid condition precedent, and it was not complied with. There is no issue of fact on that question. Plaintiff is entitled to a summary judgment, under Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A., declaring that it is not obligated to pay any claims arising out of the accident of March 21, 1954, and is not obligated to defend the case in the Court of Common Pleas. Counsel will submit an appropriate judgment order, which should provide for the payment of the return premium to the personal representative of William Albert Webb if and when appointed.