[Cite as *Pekin Ins. Co. v. West*, 2025-Ohio-210.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PEKIN INSURANCE COMPANY | JUDGES:<br>Hon. Patricia A. Delaney, P.J.<br>Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| Plaintiff-Appellee | |
| -vs- | Case Nos. 2024 CA 0012<br>2024 CA 0013<br>2024 CA 0014 |
| CHARLES WEST dba C & D AUTO<br>WORLD, et al. | |
| Defendants-Appellants | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Case No. 2023 CV 0032

JUDGMENT:                    Affirmed in part; reversed in part; and
                             remanded

DATE OF JUDGMENT ENTRY:      January 23, 2025


APPEARANCES:

For Plaintiff-Appellee

JOHN G. FARNAN
PATRICK M. CANNELL
WESTON HURD LLP
1300 East 9th Street
Suite 1400
Cleveland, Ohio  44114-1862


For Defendant-Appellant West

DAVID CARTO
WESTON HUSTON & KEYSER LLP
76 Mulberry Street
Mansfield, Ohio  44902

For Defendants-Appellants Sparks & West

THOMAS INTILI
JENNIFER MAHAN
INTILI GROUP CO., LPA
2300 Far Hills Avenue
Dayton, Ohio  45419


For Defendant-Appellant Guardian

JOHN K. RINEHARDT
MELANIE S. FAHEY
RACHEL A. RINEHARDT
RINEHARDT LAW FIRM
2404 Park Avenue West
Mansfield Ohio  44906

*Wise, J.*

{¶1}   Appellants Melvin Sparks, Denise Sparks, Dennis West, Administrator of the Estate of Solomon Grassick, Deceased, and Kristy Garver, Guardian of M.G., a Minor, appeal the February 21, 2024, decision of the Richland County Court of Common Pleas denying Appellants' motion for summary judgment and granting summary judgment in favor of Appellee Pekin Insurance Company.

## STATEMENT OF THE FACTS AND CASE

{¶2}   This appeal arises from a declaratory judgment action to determine the parties' rights and duties under a commercial insurance policy issued to Charles West dba C & D Auto World, prior to his death.

{¶3}   As set forth in the trial court's decision, based upon the record and evidence submitted in this matter, the following facts are not in dispute:

{¶4}   C & D Auto World was a sole proprietorship. It was a used car lot which Charles West owned and ran for approximately three or four years prior to his death.

{¶5}   Dennis West is Charles West's son. Dennis West worked for Charles West at C & D Auto World from day one. Charles West handled the finances and Dennis West handled the day-to-day business.

{¶6}   Dennis West is the father of Sabrina West.

{¶7}   Sabrina West and Colin Grassick had two children, Solomon and Marley Grassick. At the time of the accident involved in this case, Colin, Sabrina, and the children lived in the home of Colin's grandparents in Galion, Ohio, with Colin's mother, Kristy Garver. Ms. Garver has had legal custody of Solomon and Marley Grassick since November, 2019.

{¶8}    On June 29, 2020, Charles West died intestate.

{¶9}    Dennis West continued to manage and/or operate C & D Auto World and use, possess, and control its assets after the death of Charles West.

{¶10}  Charles West gave Colin Grassick permission to drive a 2009 Ford Escape that was titled to C & D Auto World, either for Colin Grassick to test drive with the intent to purchase the vehicle, or in order to drive Sabrina West back and forth to work.

{¶11}  On July 21, 2020, Colin Grassick was driving his minor children, Solomon Grassick and Marley Grassick, in the 2009 Ford Escape. While driving down Bowman Street, Colin Grassick crossed the center line and collided head-on with a semi-truck driven by Melvin Sparks. Mr. Sparks was seriously injured. Colin and Solomon Grassick were killed in the accident. Marley Grassick sustained minor injuries in the crash.

{¶12}  On December 21, 2020, Dennis West filed an application to become the administrator of the Estate of Charles West. He was then appointed administrator on February 11, 2021.

{¶13}  On July 22, 2022, Melvin Sparks, his wife Denise Sparks, Solomon Grassick's Estate, and subrogees of Melvin Sparks, filed a Complaint in the underlying lawsuit *Melvin G. Sparks, et al. v. Joseph L. Jerger, Administrator of the Estate of Colin A. Grassick, Deceased, et al.*, Richland County Court of Common Pleas Case Number 22-CV-348, suing for losses sustained in the collision. The named defendants in that case were C & D Auto World and Joseph L. Jerger, Administrator of the Estate of Colin A. Grassick. M. G., a minor who was also an injured party in the accident, was not included in the lawsuit.

{¶14} On February 22, 2023, in Case Number 22-CV-348, C & D Auto World was voluntarily dismissed as a Defendant by the Plaintiffs.

{¶15} On January 23, 2023, Plaintiff-Appellee Pekin Insurance Company ("Pekin") filed this declaratory judgment action, Richland County Court of Common Pleas Case No. 2023 CV 0032 ("Coverage Lawsuit"), requesting that the court declare Pekin's rights and obligations under Commercial Lines Policy No. CL023 83 98, effective from December 15, 2019 to December 15, 2020 ("Policy"), which Pekin issued to its named insured, a sole proprietor, Charles West dba C & D Auto World.

{¶16} The Coverage Lawsuit concerned insurance coverage for claims *in Melvin G. Sparks, et al. v. Joseph L. Jerger, Administrator of the Estate of Colin A. Grassick, Deceased, et al.*, Richland County Court of Common Pleas, Case No. 22CV348 ("Underlying Lawsuit"), arising from the July 21, 2020, double fatality auto accident (the "Accident") that caused the deaths of Colin Grassick and his minor child, Solomon Grassick.

{¶17} On February 17, 2023, answers were filed by Defendants-Appellants Dennis West, as Administrator of the Estate of Solomon Grassick and as Administrator of the Estate of Charles West, Deceased dba C & D Auto World ("Dennis West"), and Melvin and Denise Sparks ("Sparks").

{¶18} On February 21 and 22, 2023, Answers were filed by Defendant Joseph L Jerger, Administrator of the Estate of Colin A. Grassick, Deceased, and Defendants T.V. Minority Company and Hudson Insurance Company, respectively.

{¶19} Kristy Garver, Legal Guardian of M.G., a Minor ("Garver") [1], also answered Pekin's Complaint.

{¶20} On February 23, 2023, an Affidavit of Dennis West was filed in this matter.

{¶21} On October 2, 2023, Defendants Melvin Sparks, Denise Sparks, and Dennis West, Administrator of the Estate of Solomon Grassick, Deceased, filed a motion for summary judgment as to the claims in the Plaintiff's Complaint. The deposition of Dennis West was filed on the same date.

{¶22} On December 1, 2023, Pekin Insurance filed a combined motion for summary judgment and brief in opposition to the Hudson and Sparks Defendants' motions for summary judgment. The deposition of Kristy Garver was filed on the same date.

{¶23} On December 8, 2023, the Hudson Defendants filed a memorandum in opposition, and the Sparks Defendants filed a memorandum in opposition on December 14, 2023.

{¶24} Pekin Insurance filed a reply in support of its motion and in response to the Hudson Defendants' response on December 15, 2023 and filed a reply in support and in response to the Sparks Defendants' response on December 21, 2023.

{¶25} By Judgment Entry filed February 21, 2024, the trial court denied Appellants' motion for summary judgment and granted Plaintiff-Appellee Pekin Insurance Company's Motion for Summary Judgment, declaring that Pekin owed "no duty to defend or indemnify any individual for any claims or damages in the Underlying Lawsuit or as a result of the accident occurring on July 21, 2020." (2/21/2024 Order at 43).

{¶26} Defendants-Appellants now raise the following errors for review:

---

[1] Kristy Garver, on behalf of M.G., a minor, has never made a claim against Pekin's policy.

**ASSIGNMENTS OF ERROR**

**{¶27}** "I. THE TRIAL COURT ERRED WHEN IT DECIDED AS A MATTER OF LAW THAT COLIN GRASSICK WAS NOT A PERMISSIVE USER OF THE 2009 FORD ESCAPE WHEN THE CRASH OCCURRED.

**{¶28}** "II. THE TRIAL COURT ERRED WHEN IT ENTERED SUMMARY JUDGMENT FOR PEKIN INSURANCE COMPANY ON THE GROUNDS OF FRAUD OR MISREPRESENTATION.

**{¶29}** "III. THE TRIAL COURT ERRED WHEN IT DECIDED AS A MATTER OF LAW THAT THE "GARAGE OPERATIONS" PROVISION OF PEKIN INSURANCE COMPANY'S COMMERCIAL POLICY EXCLUDED COVERAGE FOR LOSSES PROXIMATELY RESULTING FROM THE CRASH.

**{¶30}** "IV. GENUINE ISSUES OF MATERIAL FACT PRECLUDED THE TRIAL COURT'S ENTRY OF SUMMARY JUDGMENT FOR PEKIN INSURANCE COMPANY."

<u>Summary Judgment Standard</u>

**{¶31}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36. Civ.R. 56(C) provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

**{¶32}** Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

**{¶33}** It is based upon this standard that we review Appellant's Assignments of Error.

### I. - IV.

**{¶34}** In each of their assignments of error, Appellants argue the trial court erred in granting summary judgment in favor of Appellee. As the assignments and the analyses are interrelated, we shall address them together.

**{¶35}** In its Complaint for declaratory judgment, Pekin Insurance denied that Colin Grassick was insured under its Policy. *See*, Complaint, ¶¶ 32-33. Pekin denies, therefore, that Collision-related losses sustained by Defendants-Appellants are covered by that Policy. *Id.* Alternatively, Pekin contends that if Colin Grassick was insured under the Policy, coverage is limited substantially by its allegation that Grassick was a customer of C & D Auto World on a test drive when the crash occurred. *See*, Complaint, ¶¶ 35-37.

**{¶36}** In response to Pekin's allegations, Defendants-Appellants maintain that the losses arising from Colin Grassick's negligence are covered under the Policy up to the Policy's $500,000 bodily injury limit, because Grassick was a permissive user of C & D's 2009 Ford Escape when the Collision occurred, and he was not, in fact, a "customer" of C & D Auto World. (Answer of Sparks Defendants, Second Affirmative Defense; Answer of Dennis West, Second Affirmative Defense).

**{¶37}** The central issues before this Court are:

(1) whether Colin Grassick was a permissive user of the Ford Escape when the Collision occurred;

(2) whether the losses arising from Colin Grassick's negligent use of the Ford Escape are covered under the "garage operations" provision of the Policy up to the Policy's maximum $500,000 bodily injury limit; or alternatively,

(3) whether Colin Grassick was a customer test driving the Ford Escape when the Collision occurred thereby limiting Pekin's aggregate liability for Collision-related losses to a mere $50,000.

**{¶38}** All parties agree that if Colin Grassick was not a permissive user of the Ford Escape, then Pekin is not liable for any Collision-related loss. All parties also agree that if Colin Grassick was a permissive user of the Ford Escape, and the "garage operations" provision of the Pekin Policy includes Grassick's personal use of that vehicle, then Pekin is contractually liable for all Collision-related losses up to the Policy's $500,000 coverage limit. *Id.* Finally, all parties agree that if Colin Grassick was a customer of C & D Auto World on a test drive when the Collision occurred, then Pekin's contractual liability for Collision-related losses is limited to $50,000, Ohio's statutory minimum auto liability coverage limit for injury or death to two or more persons. Complaint, ¶¶ 35-37.

### *Insurance Policy*

#### *Named Insured*

**{¶39}** Charles West was the named insured on the commercial garage liability insurance policy at issue in this case. He was insured as an individual as Charles West dba C & D Auto World.

**{¶40}** The Policy at issue in this case contains the following relevant provisions:

**SECTION II – LIABILITY COVERAGE**

    **A. COVERAGE**

        \*\*\*

    **"GARAGE OPERATIONS" – COVERED "AUTOS"**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership, maintenance or use of covered "autos".

Subsection (A)(I) of Section II identifies "insureds" relative to "garage operations" and "covered autos":

**1. WHO IS AN INSURED**

a. The following are "insureds" for covered "autos":

(1) You for any covered "auto".

(2) Anyone else while using with your permission a covered "auto" you own, hire or borrow except

(a) The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(b) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

(c) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is your "garage operations".

(d) Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or financial responsibility law limits where the covered "auto" is principally garaged they are an "insured" only

for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance.

(e) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

(3) Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

\*\*\*

**C. LIMIT OF INSURANCE**

\*\*\*

**2. LIMIT OF INSURANCE - "GARAGE OPERATIONS" – COVERED "AUTOS"**

For "accidents" resulting from "garage operations" involving the ownership, maintenance of use of covered "autos", the following applies:

Regardless of the number of covered "autos", "insureds'', premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages ... from any one "accident" involving a covered "auto" is the Each "Accident" Limit of Insurance - "Garage Operations" - Covered "Autos" or Liability Coverage shown in the Declarations.

**SECTION VI – DEFINITIONS**

E. "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the

ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

F.  "Insured" means any person or organization qualifying as an insured in the **Who Is an Insured** provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought. (emphasis added and in original).

**COMMON POLICY CONDITIONS**

All Coverage Parts Included in this policy are subject to the following conditions:

\*\*\*

F.  If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**{¶41}** We review *de novo* a trial court's ruling on a question of law in a declaratory-judgment action. *Arnott v. Arnott*, 2012-Ohio-3208 ¶ 13.

**{¶42}** "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.' " *Id.* at ¶ 8, quoting

*Rhoades v. Equitable Life Assur. Soc. of U. S.*, 54 Ohio St.2d 45, 47 (1978). "As we examine the contract as whole, we presume that the parties' intent is reflected in the language used. When the policy language is clear, the court may look no further to find the intent of the parties." *Houston v. Liberty Mut. Fire Ins. Co.*, 2005-Ohio-4177 ¶ 36 (6th Dist.).

**{¶43}** "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. "If a reasonable interpretation of the language exists, then we should give the agreement its intended legal effect." *Laboy v. Grange Indemn. Ins. Co.*, 144 Ohio St.3d 234, 2015-Ohio-3308, 41 N.E.3d 1224, ¶ 10.

### Permissive Use (AOE I)

**{¶44}** Appellants herein argue that the trial court erred in finding Colin Grassick was not a permissive user at the time of the accident.

**{¶45}** In the subject Policy, under the section entitled, WHO IS AN INSURED for Covered "Autos," the Policy includes an omnibus clause which states "Anyone else is an 'insured' while using with your permission a covered 'auto'."

**{¶46}** The purpose of an omnibus clause is to extend liability coverage to persons, other than the owner of a vehicle, who had permission of the insured to use the vehicle without arbitrary or definite restrictions on such use. Couch on Insurance 2d (Rev. Ed. 1981) 619, Section 45:293. An omnibus clause provides the named insured with the discretionary power to select other persons as "additional insureds." *Fox v. Crawford* (Ohio App. 1947), 50 Ohio Law Abs. 553, 556, 80 N.E.2d 187.

**{¶47}** "[I]t has been generally held that permissive use, within the meaning of the omnibus clause, terminates with the death of the named insured." *Inland Mut. Ins. Co.* v. *Peterson,* 148 F.Supp. 392, 398 (D.Md.1957) citing to *New Century Cas. Co. v. Chase,* 39 F.Supp. 768 (S.D.W.Va.1941); Appleman, Insurance Law Practice, 4359. See also *Toney v. Henney,* 166 F.Supp. 85 (N.D. Ohio 1958)(noting that cases citing to the fact that death terminates such permission were not applicable to the case currently before the Court which involved incompetency and not death).

**{¶48}** Appellants contend, however, that Dennis West had "proper temporary custody of Charles West's real and personal property" and that he also "possessed all of Charles West's rights and duties" under the Policy. (Appellants' Brief at 17-18).

**{¶49}** The trial court below found that Colin Grassick did not have permission from the named insured Charles West to operate the Ford Escape because any such permission terminated upon his death. The trial court further found that Dennis West either gave express permission to Colin Grassick to drive the vehicle or implied permission by allowing him to continue to use the vehicle after Charles West's death. However, the trial court found that Dennis West lacked the authority to grant such permission because he was not a named insured on the policy.

**{¶50}** In support of its finding, the trial court explained:

"Dennis West did not have proper temporary custody of Charles West's real and personal property. When a sole proprietor dies, the business and its assets are a part of the estate. The Ohio Revised Code permits the executor to carry on with the business for four months without liability and after that only with permission of the probate court.  Defendant

Dennis West did not transfer the business or its assets through the probate court and certainly not before the accident in this case."

**{¶51}** (2/21/2024 Order at 33).

**{¶52}** In so finding, the trial court relied on R.C. §2113.30, which provides:

"Except as otherwise directed by the decedent in his last will and testament, an executor or administrator may, without personal liability for losses incurred, *continue the decedent's business* during one month next following the date of the appointment of such executor or administrator, unless the probate court directs otherwise, and for such further time as the court may authorize on hearing and after notice to the surviving spouse and distributees. In either case no debts incurred or contracts entered into shall involve the estate beyond the assets used in such business immediately prior to the death of the decedent without the approval of the court first obtained. During the time the business is continued, the executor or administrator shall file monthly reports in the court, setting forth the receipts and expenses of the business for the preceding month and such other pertinent information as the court may require. The executor or administrator may not bind the estate without court approval beyond the period during which the business is continued." (Emphasis sic.)

**{¶53}** Initially, we note that R.C. §2113.30 permits an "executor or administer to *continue the decedent's business* during one month next following the date of the appointment of such executor or administrator", not four months as stated by the trial court.

{¶54} Further, in *Sudnick v. Klein*, 2002-Ohio-7341, ¶ 26 (11th Dist.), the Court found "the purpose of R.C. 2113.30 is to protect the interests of the heirs by requiring the executor or administrator to obtain the permission of the probate court in order to continue the business for more than one month, and to file monthly reports setting forth the receipts and expenses." *Sudnek* at 340. "R.C. 2113.30 simply provides the probate court with a method of protecting the interests of the heirs, while at the same time providing immunity for the executor who abides by the terms of the statute." *Sudnek* at 340. "Put another way, R.C. 2113.30 … does not even forbid an executor from continuing a business after a decedent's death". *In re Shaw*, 4th Dist. No. 83 CA 36 (1985), (holding that "[t]he statute does not absolutely prohibit the continuation of a decedent's business but, rather, withdraws protection against personal liability of the executor"). Instead, an executor who continues a decedent's business after one month from the date of appointment as executor, without first obtaining the permission of the probate court, does so at his peril, and may be accountable for any losses incurred by the business.

{¶55} We therefore find that R.C. §2113.30 did not prohibit Dennis West from continuing business as C & D Auto World, although he did so without protection from personal liability.

{¶56} Upon the death of Charles West, Dennis West continued operations at C & D Auto World, thereby acquiring temporary custody of Charles West's real and personal property, which included the Ford Escape. The Policy states that Dennis West also possessed Charles West's rights and duties with respect to the property.

{¶57} Here, we find that there is evidence in the record to support a finding that Charles West gave permission to Colin Grassick to operate the car, and that Dennis West allowed such permission to continue.

{¶58} Permission or consent need not be express, but may be implied from the attending circumstances. *Toney v. Henney*, 166 F.Supp. 85; *Webb v. Grimm*, 116 Ohio App. 63. See generally, 58 Ohio Jurisprudence 3d 406, Sections 904, et seq. It is well-settled in Ohio that the implied consent necessary under an insurance policy can arise by way of inference or deduction from the acts and conduct of the parties. *Kazdan v. Stein* (1927), 26 Ohio App. 455, affirmed (1928), 118 Ohio St. 217. It is generally accepted that such acts and conduct include previous use or consent, place of keeping the keys, statements of the insured, and the relationship of the parties, and the like. *Toney v. Henney* (N.D. Ohio, 1958), 166 F.Supp. 85, affirmed (C.A.6, 1961), 291 F.2d 76. Nevertheless, the Supreme Court of Ohio has held that even if implied permission existed in the past, the critical fact to be determined is whether implied permission existed at the time of the accident. *Frankenmuth Mut. Ins. Co. v. Selz*, 6 Ohio St.3d 169, 172 (1983); *Progressive Cas. Ins. Co. v. Kuhn*, 6th Dist. Lucas No. L-88-268.

{¶59} The determination of whether permission was granted poses a factual question. *Indiana Ins. Co. v. Costner*, 2nd Dist. Montgomery No. CA 9542 citing *Garlick v. McFarland*, 159 Ohio St. 539.

{¶60} We likewise find evidence in the record to support a finding that Colin Grassick was possibly considering purchasing the vehicle, making him a potential or prospective customer on a test drive.

**{¶61}** The trial court itself stated in its Order,

> … there are questions of fact as to the state and ownership of the business and its assets at the time of the accident. There is also a question of fact as to whether Colin Grassick had permission from Defendant Dennis West to use the vehicle in question for personal use or as a potential customer.

**{¶62}** (2/21/2024 Order at 24).

**{¶63}** We therefore find that a genuine issue of material fact exists as to whether Colin Grassick was a permissive user of the Ford Escape under the policy.

### Garage Operations (AOE III)

**{¶64}** The policy at issue in the instant case is a Garage Coverage Form which provides coverage for accidents resulting from "garage operations" and covers any bodily injury or physical damages that are caused by an occurrence and arising out of the ownership and operation of a garage.

**{¶65}** As set forth above, the Policy herein defines "Garage Operations" as follows:

> "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. 'Garage operations' includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

{¶66} Appellants argue that the sentence "garage operations includes ownership, maintenance or use of the autos indicated in Section I of this coverage form" means that any use of the covered autos, even personal use, is covered under the definition of "garage operations."

{¶67} The trial court, in its decision, determined that Colin Grassick's use of the Ford Escape "did not fall under the definition of garage operations to be covered under the Garage Coverage Form." (2/21/2024 Order at 42).

{¶68} As stated by the trial court, "[t]he definition of "garage operations" in the insurance contract contains three sentences. Those sentences must be read together. To read this sentence in isolation completely defeats the purpose of a "garage" policy and creates an obvious absurdity in the contract. (2/21/2024 Order at 39).

{¶69} Upon review, we agree with the determination by the trial court that coverage under this provision is limited to the use of covered autos "necessary or incidental to a garage business". Personal use of an automobile is generally not covered under garage operation policies and coverage is not typically found where the automobile is not being used in connection with operations relating to the garage.

{¶70} Here Colin Grassick was not using the automobile in connection with garage business or operations incidental to or relating to the garage, but rather as either a prospective customer or for personal use unrelated to garage business.

***Fraud or Misrepresentation (AOE II)***

{¶71} Appellant argues that the trial court erred in granting summary judgment on the grounds of fraud or misrepresentation. We agree.

**{¶72}** The Policy herein contains the following provision:

**B. GENERAL CONDITIONS ...**

**2. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other 'insured,' at any time, intentionally conceal or misrepresent a material fact concerning:

a. This Coverage Form;

b. The covered 'auto';

c. Your interest in the covered 'auto'; or

d. A claim under this Coverage Form.

**{¶73}** The trial court found that Dennis West's "failure to cooperate and his material misrepresentations made in an attempt to fit the accident under the umbrella of the garage coverage could void coverage under the contract and under Ohio law." (2/21/2024 Order at 28).

**{¶74}** More specifically, the trial court found that Dennis West made material misrepresentations as to 1) whether Dennis West was an "insured party", and 2) what capacity Colin Grassick had possession of the vehicle. The statements characterized by the trial court were statements made to Pekin's claims adjuster and the Richland County Probate Court, which included a statement by Dennis West that Colin Grassick was a prospective customer taking the vehicle on a test drive, a statement in an Affidavit in the probate court that Colin Grassick was his son and that he and Solomon Grassick were

living with him at the time of the accident, and a statement in a second Affidavit stating that Colin Grassick had the vehicle with his permission.

**{¶75}** The trial court found that such inconsistent statements were purposeful, material misrepresentations which voided any obligations of Pekin under the Policy.

**{¶76}** Upon review, we find that Appellee Pekin has largely asserted fraud as an affirmative defense to insurance claims asserted. However, Pekin did plead fraud in its Complaint.

**{¶77}** Rule 9(B) provides that "the circumstances constituting fraud or mistake shall be stated with particularity." "The circumstances constituting fraud, as that phrase is used in Rule 9(B), include the time, place, and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Wright v. Bank of New York*, 2012-Ohio-2289, ¶ 19 (9th Dist.), quoting *Hamblin v. Daugherty*, 2007-Ohio-5893, ¶ 20 (9th Dist.). "To have met the requirements of Civ.R. 9(B), the complaint * * * must have 'sufficiently apprised' the defendant 'of the specific claims to be required to answer.' " *L.E. Sommer Kidron, Inc. v. Kohler*, 2007-Ohio-885, ¶ 27 (9th Dist.), quoting *Haddon View Invest. Co. v. Coopers & Lybrand*, 70 Ohio St.2d 154, 159 (1982).

**{¶78}** To prove fraud, a plaintiff must demonstrate the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable

reliance upon the representation or concealment; and, (6) a resulting injury proximately caused by the reliance. *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998).

**{¶79}** Here, not only was fraud not pled with particularity, Appellee Pekin has not alleged any actual or detrimental reliance on such statements. Further, while we do not disagree that the statements may have been inconsistent, we find that the materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact. *See Turley v. State Farm Mut. Auto. Ins. Co.,* 944 F.2d 669, 672 (10th Cir.1991); *Long v. Insurance Co. of N. Am.,* 670 F.2d 930, 934 (10th Cir.1982). *Abon, Ltd. v. Transcontinental Ins. Co.*, 2005-Ohio-3052, ¶ 81 (5th Dist.).

### Genuine Issues of Material Fact (AOE IV)

**{¶80}** Based on the foregoing, we find that the trial court did not err in finding that no genuine issue of material fact existed as to a lack of coverage under the Garage Coverage Form as Colin Grassick's use of the vehicle did not fall within the definition of garage operations.

**{¶81}** However, we do find the trial court erred in finding that no genuine issue of material fact existed as to whether Colin Grassick was a permissive user and/or a potential customer of C & D Auto World for the purchase of the Ford Escape.

{¶82}  Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with the law and this opinion.

By: Wise, J.

Delaney, P. J., and

Gwin, J., concur.


JWW/kw 0113