## SHOUP v CLEMANS, et

Ohio Appeals, 2nd Dist, Clark Co

No 391. Decided February 20th, 1939

S. A. Bowman, Springfield, for plaintiff-appellee.

James B. Malone, Springfield, for defendant-appellant.

## OPINION

**By THE COURT:**

This matter is before this court upon appeal on questions of law from an order of the Court of Common Pleas overruling the motions of The Buckeye Union Casualty Company, for a directed verdict, motion for new trial, and for judgment non obstante, and awarding judgment against it in favor of plaintiff.

Plaintiff below filed a petition against Clifford A. Clemans, of South Solon, Ohio, alleging that a collision occurred between his car and that driven by Clemans, by reason of which his automobile was damaged, and he himself suffered personal injuries.

It is alleged that the injuries and damages were directly and proximately caused by defendant's negligence in matters set out in the petition, and that he suffered the injuries therein described.

This cause was tried before a jury. Summons was issued to the sheriff of Madison County, which was returned showing residential service.

On July 15, 1936, the defendant not appearing or being represented by counsel, the cause was submitted to a jury which assessed the amount due the plaintiff from the defendant, Clifford A. Clemans, in the sum of $10,000.00.

On October 3, 1936, leave was granted by the court to plaintiff to file a supplemental petition making The Buckeye Union Casualty Company, of Columbus, Ohio, a party defendant, said supplemental petition being filed the same day.

The supplemental petition, for a cause of action, states that the defendant, The Buckeye Union Casualty Company, is a corporation engaged in the business of writing insurance, and that on the 21st day of May, 1934, it wrote a policy of insurance for one Katherine Coil, of Bookwalter, Ohio; that under the terms of said policy, said defendant insured Katherine Coil in the sum of $5,000.00, for bodily injuries inflicted on any one person, and for property damage caused by the automobile of the said Katherine Coil, and agreed to pay on behalf of said Katherine Coil, for loss or expenses resulting from the claims upon Katherine Coil for damages, for which the said Katherine Coil may be legally liable by reason of the ownership or use of said insured automobile; that the policy contained a further clause known as the "extened cov-

erage clause", by the terms of which the defendant agreed that any insurance granted, should in addition to the assured named therein, to-wit, Katherine Coil, inure to the benefit of any person, excepting chauffeurs and domestic servants, legally operating the automobile, provided said use was with the permission of the named assured, who if an individual, might give such permission through an adult member of her household.

It is further alleged, that on the 12th day of January, 1935, while said policy of insurance was in force, one Clifford A. Clemans was legally driving the automobile described in the policy and belonging to Katherine Coil, with her permission and also with the permission of her son, Edmond Coil, who was then an adult member of her household.

The plaintiff pleads the recovery of a judgment against said. Clifford A. Clemans, in the sum of $10,000.00, alleges that no part thereof has been paid, and prays judgment against The Buckeye Union Casualty Company, in the sum of $6,200.00, being $5,000.00 because of bodily injury, and $1,200.00 for loss or damage to tangible or intangible property, with costs and interest.

The defendant was properly served with summons, and filed an answer to the supplemental petition, admitting that it is a corporation engaged in the business of writing insurance, and that it wrote the policy of insurance for Katherine Coil, and denies all other allegations of the petition, and prays that it be dismissed.

On March 27, 1937, a jury returned a verdict against the Buckeye Union Casualty Company, in the sum of $6,000.00. The defendant filed motions for directed verdict, in arrest of judgment and for new trial. These motions were overruled and judgment entered according to the verdict. Notice of appeal was filed, and bond fixed, and a cash deposit permitted and made in lieu of bond, and the case was lodged in this court.

Appropriate assignment of errors was filed by The Buckeye Union Casualty Company, sixteen grounds of error being asserted.

The basis of an important error complained of is that the judgment against Clemans was not a final judgment, in that he was sued as an adult when in fact he was, at the time, a minor.

Sec. 9510-4, GC, the statute under which a recovery may be had against the Insurance Company, has this opening clause—

"Upon the recovery of a final judgment etc."

It is claimed by counsel for the Insurance Company that the defendant in the original action, Clifford Clemans, being a minor, the judgment recovered against him was not "final" in that no guardian ad litem had been appointed for him, and that under §11603 GC, he would have a year after majority within which to set aside the judgment.

The judgment taken against the infant, Clemans, was not void but voidable, and in our judgment was a final judgment until it may have been set aside by the infant or the court. All judgments are subject to review, and all may be set aside, but that does not establish the fact that such judgments are not final. We hold that there was no error in permitting the action against the Insurance Company.

This disposes of kindred assignments asserted by defendant, and they need not be noted in detail.

It is of no consequence whether the Insurance Company is a direct party in interest or whether its attack upon the judgment by reason of the minority of Clemans is direct or collateral.

By virtue of the omnibus clause, the insurance could be extended, under certain conditions, one being the permission for the use of the car through an adult member of the assured's household.

It needs no argument to sustain the claim that this provision must be construed in harmony with the words used. If there is no ambiguity, no construction is required.

The clause provides in substance that any insurance shall, in addition to the assured named, inure to the benefit of any person legally operating the automobile, provided that such use is with the permission of the named assured, who "if an individual, may give such permission through an adult member of his household."

It appears from the evidence that the son of Mrs. Coil was not at the time of the accident an adult, being less than twenty-one years of age, and as a consequence any permission that he may have given to Clemans did not bind the Insurance Company under the terms of the policy. Mrs. Coil, the insured and owner of the car, could not appoint her minor son as a person who could bind the Insurance Company, for the reason that the terms of the policy did not make the policy inure to the benefit of the person who might be

operating the car, unless such person does so with the permission of the assured acting as an individual, or through some adult member of her household. This excludes any other agency through which the permission may be granted.

The supplemental petition alleges that Clemans was legally driving the automobile belonging to Katherine Coil with her permission, and also with the permission of her son, Edmond Coil, who was then an adult member of her household.

We conclude that Edmond Coil could not give such permission by reason of his minority. The provisions of the policy do not designate any one other than the assured as a person empowered to give the permission, but does provide that the assured may give such permission through an adult member of her household. It is her permission that is to be given, but she may give it through an adult member of her household. She herself and an adult member of her household are the only ones authorized to grant the permission.

These conclusions exclude from our consideration any statement that the son may have made as to permission he may have given, except so far as it may reflect upon permission given either by the mother or some adult member of the household. The mother has testified and also her husband.

## THE EVIDENCE AS TO PERMISSION

We will briefly review the evidence bearing upon the question of permission granted by the assured to Clifford Clemans to use the car described in the policy.

It must be permission of the insured falling within the expressed terms of the omnibus clause: "Provided that such use is with permission of the named assured who, if an individual, may give such permission through an adult member of his household."

**Edwin Coil** Lives in South Solon, son of Samuel Coil and Katherine Coil, who live in Bookwalter, six miles from South Solon. At the time of the accident he was living with his parents. The car had been purchased about eight months before the accident. He used the car whenever he wanted it, without objection of his father or mother. On the night of the accident he was with his friend Kessler, and does not remember whether his father and mother were at home; he had occasionally allowed his friends to use the car, including Arthur Clemans, who was with him most of the time; he permitted either Kessler or Clemans to use the car, which fact was known

to his mother and father. He had the right to use the car as if it were his own; his father let Clemans drive the car on occasions, as would also his mother. On the night of the accident Coil and Kessler came to South Solon and met Clemans and came to Springfield, where Coil got two girl friends; Coil went into the house and Kessler and Clemans went downtown to get cigarettes; Coil told Clemans to take the car for that purpose; the cigarettes being for general consumption Coil told the other two boys to go downtown and get them.

On cross-examination Coil stated that on January 12, 1935, the date of the accident, he was twenty years of age, and resided with his father and mother; at the time he and Kessler started from his mother's home Clemans was not there, but they picked him up at South Solon; the mother did not see Clemans after he was picked up at South Solon, nor was either the mother or father in Springfield, until after the accident occurred. Coil's mother trusted him with the car and he had the responsibility for the car. Coil felt that when Clemans was driving the car he did his best, but that Coil had the responsibility.

On the particular night, Mrs. Coil had not expressly given permission for Clemans to drive the car.

**Harry Kessler** Twenty years old at time of accident; had driven the car on many occasions, with the permission of Mrs. Coil and her husband; had driven it with Edwin Coil many times, of which Mr. and Mrs. Coil knew; they never objected. Clifford Clemans often drove the car with Mr. and Mrs. Coil's knowledge. Mr. and Mrs. Coil always told them to take the car and take care of it, but that if anything happened they would have to stand good for it. The father and mother gave Edwin permission to take the car and knew that he would not drive it all the time, and that he let the other two boys drive part of the time. Mr. Coil gave permission to take the car out Saturday night, and be responsible for anything that happened. Kessler and Coil left Bookwalter, the home of Mr. and Mrs. Coil, in the early evening, getting to South Solon shortly thereafter, where they picked up Clemans, who went with them to Springfield. He gives further testimony as to the matters testified to by Coil.

**Cross-Examination:** When they left the Coil home they had no arrangement with Clemans to come with them to Springfield, although they generally picked him up at Solon Neither Mr. or Mrs. Coil were in Solon nor at Springfield until after the accident.

**Arthur Clifford Clemans** Lives at South Solon; at the time of the accident was nineteen; has known Coil family all his life, intimately—had worked with them; had driven the Chevrolet car, belonging to the Coils, which car they owned before the Ford car was purchased; he had a standing permission from Mr. and Mrs. Coil to drive it, and had driven it with their permission. When he was going around with Edwin Coil he used Mrs. Coil's car most of the time; when Edwin wanted the car he would not have to have permission every time he wished to drive it. Mrs. Coil stated that as soon as Edwin was twenty-one they would turn the car over to him; when Edwin had the car both he and Clemans drove it, one and then the other, which fact was known to Mr. and Mrs. Coil, who never objected. On the night of the accident Coil and Kessler met him at his home in South Solon and they drove to Springfield, and went to the home of their girl friends, when Edwin Coil told them to drive to town and get cigarettes. After the accident Clemans told police, and Mr. Coil, the father, came to the police station; did not see Mrs. Coil for several days. He had been driving one or more of the automobiles owned by Mrs. Coil, with her knowledge and consent, ever since 1933; the accident happened on January 12, 1935.

**Cross-Examination:** He did not defend against Mr. Shoup's action; would not do him any good—they would have got judgment regardless of whether he was there or not; was not at the home of Mr. and Mrs. Coil on the day of the accident. Recited the incidents leading up to the accident, and his subsequent arrest. He had driven the machine of Mrs. Coil "lots of times, any place he wanted to go." Had driven the Ford car around his home, Washington, C. H., Springfield, London, with the knowledge of Mrs. Coil.

**Katherine Coil** Lives at Bookwalter, the wife of Samuel, and the mother of Edwin Coil; was the owner of a Ford car in January, 1935, which was covered with the insurance policy. She and her husband bought the car for the boy, and took it in her own name as he was not of age; intended to give it to him when he became of age. They, Mr. and Mrs. Coil, felt that they would like Edwin to have the car: "he always did run it—we never went much with him, and he and his boy friends went together in it, and it was all right with us." Has known Clemans for six years; he was often at her house; he drove a truck for Mr. Coil. Prior to the accident Clemans had frequently driven the Ford car with her knowledge and consent; had gone to the store and on errands and things of that kind. When Edwin had the car he had her permission to let his friends drive it; she didn't care for them driving it if they would take good care of it. She did not object; Edwin was free to take the car as he wished, and she considered it Edwin's.

**Cross-Examination:** On January 12, 1935, Clemans was not at her home, and she did not know until after the accident that he was with Edwin; she had not given him permission to drive the car by himself that night, nor had her husband; didn't know that Edwin was with the Clemans boy that night. Clemans did sometimes take the car from their home to the store when they were in Delaware; he would go to the store when he was up there trucking for them; never gave him permission to drive the car on trips for himself; he went around places with Edwin. At the time of the accident did not know that he was in the car; didn't care for him driving the car when he was with Edwin, if Edwin gave consent; it was Edwin's car; did not give Edwin directions to let his friends drive his car only if he were in it—he was old enough to know what he was doing himself; did not give Clemans authority to take the car out alone when he was away in other cities. If Clemans drove the car alone at the time of the accident, her permission was not given at that time, because she did not see him that day; did not give Edwin permission to drive it in Springfield—she was not in Springfield. Clemans drove the car all the time when he was with Edwin—most of the time. It was all right with her—they were always together with it. Never told Edwin that he had to be in the car himself; thought they could get along all right.

**Samuel Coil** Lives at Bookwalter, father of Edwin Coil and husband of Katherine Coil; occupation—farmer—trucker in 1935. When he needed help in his trucking business he hired Kessler and Clemans. Bought the Ford to give to his son, but as he was not of age he put it in his wife's name; he bought the car for his son and he generally took it when he wanted to go some place; he had given Kessler and Clemans permission to drive the car, and had given Edwin permission to let his friends drive the car.

**Cross-Examination:** On January 12, 1935, the first knowledge he had that Clemans was in the machine was after the accident; Clemans was not at his house that day, and he had not given him permission to drive the car that night; the one time he saw Clemans that night was at the jail, after the accident; he had given a permis-

sion to Clemans to drive the Ford. He stated in a deposition that he never had given permission to Clemans to drive the automobile owned by his wife.

**Re-Direct Examination:** In spite of such statement in the deposition, what he now testifies to is correct; he had given him permission to drive it.

**Re-Cross-Examination:** Gave the permission when in Delaware—in the fall of 1934; the only time he had permission to drive that car was in the fall of 1934 — if they wanted something from the grocery downtown; never gave him permission to drive the car alone, but to go on little trips on business; never told him to go to Springfield, probably did if he thought Edwin was with him.

The foregoing presents substantially all the evidence in reference to the permission given either by the assured, or by her through an adult member of her household.

At the conclusion of plaintiff's testimony, the defendant interposed a motion to direct the jury to return a verdict for the Insurance Company, for the reason set out in said motion; this motion was overruled; and the Company offered its evidence, and afterwards renewed the motion for an instructed verdict, and for judgment non obstante veridicto, which motions were overruled.

This brings us to the consideration of the important question as to whether or not, under the testimony so submitted, the court erred in overruling the defendant's motions.

**Utopia Theatre Co. v Lautermilch, 118 Oh St 167,** holds that:

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusion, it is the province of the jury to perform that function."

The case of **Huback v Cole, 133 Oh St, 137,** holds that:

" * * * it is reversible error to arrest the evidence from the jury at the close of plaintiff's case in chief and render judgment for the defendant, where, viewing plaintiff's evidence in the light most favorable to her contention, she has presented a chain of circumstances and events from which an inference may reasonably arise * * * "

The case of **Hamden Lodge v Gas Co., 127 Oh St, 469,** holds:

"Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

"Where from the evidence reasonable minds may reach different conclusion upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

The evidence in this case, through which it is claimed that the use was with the permission of the assured acting for herself, or through an adult member of her household, is not very satisfactory, but we nevertheless are of the opinion that under the above cited cases it should have been submitted for the determination of the jury under proper instructions of the court, and that, therefore, the court did not err in overruling the motion of the defendant for an instructed verdict, or for judgment notwithstanding the verdict.

Having determined that the judgment against the defendant Clemans was final, notwithstanding the fact that he was a minor at the time of the rendition, and having further determined that the evidence was properly submitted to a jury, we come to consider the other assignments of error asserted by the defendant.

It is urged by counsel for defendant that the permission which would cause the insurance to inure to the benefit of Clemans, must have been specifically given for the special trip made by Clemans which resulted in the accident. If this be true, then the plaintiff cannot recover for the reason that it is clear that no specific permission was extended to him to use the car on the night of the accident.

However, we are of the opinion that if any permission were granted, it was a general permission to use the car at any time, and was not confined or intended to be confined to a specific trip.

It is true that the testimony of both the husband and wife as to the use of the car related largely to the time when the parties were residing in Delaware. Whatever permission may have been granted, either

by the assured or an adult member of her household, other than the Delaware transaction, was general in its nature, and was not confined to any specific time or trip.

The next question to be considered is whether or not the authority to use the car must be express, or whether it may be implied from the circumstances shown by the evidence.

The recent case of **Miller v Ins. Co.**, decided by the Supreme Court, **134 Oh St, 289** (O. S. Bar Reporter—Aug. 8, 1938), passes upon the question of express or implied authority for the use of an automobile. The court, on page 293, states in substance that the question whether the agent had authority, express or implied, to use his own automobile in the discharge of his duties is one of fact for the jury.

From the evidence introduced, it is possible for different minds reasonably to draw different conclusions, and the submission to the jury was proper.

It was there held that the use of an automobile, although not expressly required, was nevertheless allowed; though not expressly authorized was not expressly forbidden. Its use continued and the acquiescence continued with it. "Continued acquiescence in the performance of a previously unauthorized act ripens into tacit approval and authorization." "Where an insurance solicitor uses his automobile in his work, with the knowledge of his employer, repetitious use by the solicitor, without express disapproval by the employer, will be treated as a use with implied authority."

While the facts in this case are not similar to the case at bar, yet we feel that the principles there announced have application to this case.

We, therefore, hold as to authority, that it may be either express or implied from the facts and circumstances.

Defendant's brief presents at large the question as to whether the minor, Edwin Coil, could give consent to Clemans, such as would bind the Insurance Company. We have already held upon this point to the effect that the minor could not give such consent.

The next error complained of is as to Charge No. 1, given by the court upon the request of the plaintiff, in which the court charged the jury that if it find from a preponderance of the evidence that there is any uncertainty in the interpretation of the language used in the policy, it should be construed most strongly against the Insurance Company.

It is claimed by counsel for defendant that construction is the province of the court and not of the jury, and that the submission of the contract to the jury when no ambiguity exists is erroneous.

Counsel for defendant is right in his contention that the contract is for the court and not for the jury, and further that there is no ambiguity in the contract requiring a construction either by the court or jury. However, we do not feel that this charge was prejudicially erroneous.

It is next claimed that Special Charges two and three are erroneous.

Charge No. 2 sets out the omnibus clause, and the jury is charged that under its language the assured may give permission to any other persons than those excepted, to use the automobile, which permission may be given in any lawful manner, and may be either express or implied, and that her right to give the permission through an adult member of her household is in addition to all other methods of giving permission to which she would be entitled.

Special Instruction No. 3 is to the effect that if by a preponderance of the evidence the jury finds that Clemans was driving the automobile of the assured at the time the plaintiff was injured, with her permission, either express or implied, Clemans is an additional insured within the terms of the policy, and is entitled to the protection of said policy, provided its other terms have been complied with.

The point complained of is that the trial court permitted the jury to include in the terms of the omnibus clause, Clemans—who was not operating the car with the assured's knowledge at the time and place where the accident happened and it is asserted that the only permission he had was from Edwin Coil, a minor.

We think we have sufficiently passed upon all of these questions, and that it follows from a determination of them that neither Charge No. 2, nor Charge No. 3 were prejudicially erroneous.

It is complained by the defendant that the court erred in allowing the plaintiff to make the petition evidence in the case, as disclosed on page 6 of the record, it being claimed that it was highly prejudicial, and gave emphasis to the plaintiff's purported cause of action as weighing against the defendant.

The record, page 6, discloses that counsel for plaintiff offered the petition in the original case in evidence, and that the same is received and made a part of the record —marked "Plaintiff's Exhibit D".

The record does not disclose any objection or exception made by counsel for defendant, nor any claim made to the court as to the incompetency of this petition, and we do not see how it is prejudicial even if it had been objected to. This claim of error is overruled.

Complaint is made of the court's general charge, the first part of the complaint being addressed to the omission of the court to charge as to certain matters.

We think it is well settled that omissions of the court to charge cannot be made the foundation for error unless the matter has been called to the attention of the court in the proper way.

The question as to whether the court erred in its definition of permission has already been passed upon.

Complaint is also made that the trial of the case disclosed the fact that there was an evident purpose common to all witnesses for the plaintiff to lay the burden upon the Insurance Company, and that upon the record the defendant is entitled to be protected against collusion and miscarriage occurring in the court below.

We do not believe that it is the province of a reviewing court to set aside the verdict of the jury on the ground of collusion of the witnesses unless there is more of a showing thereof than is made in this case.

Many cases have been cited by counsel for defendant in support of the position asserted. Upon examination of these cases we find that there is a marked difference between the facts of the cases and the facts disclosed in the case at bar.

We might cite specifically **Kazdan v Stein, 26 Oh Ap 455**, and that of **Denny v Indemnity Co., p. 566, of the same volume**.

In the first case the court held that whether the consent is express or implied depends upon the conduct of the party whose consent must be had, and that whatever may be the circumstance in order to recover there must be a connection made with the conduct of the party whose consent, either express or implied, is necessary.

The court points out that the implied consent must arise by way of inference from the acts and conduct not only of one of the parties but of both, and that there was no evidence of such a legal status in the record.

It seems to us that the court's charge in this case avoids the criticism made by the court in the Kazdan case. In the Denney case, the court held that the question of whether the employe was driving with company's permission was question of fact, and that when the employe, driving the master's car, deviated from the route on business of his own, without the master's knowledge, the master cannot be said to have acquiesced in the use of the car, or to have impliedly permitted the employe to use the same while he was on his own business.

This case was decided on the fact that there was no evidence showing permission of the defendant to his employe to use the car for his private business.

In the case at bar, the question of the user of the car acting within the scope of his permission, is not raised by the evidence. If the permission were extended at all, it was a general permission both as to time and to place, within the limits of the policy, granting the extension for use for "pleasure and business or commercial." The claim of the defendant that the permission must relate to the specific trip which resulted in the injury has already been passed upon adversely.

The car was being used for pleasure, and if the assured, either through her own act or through her husband, granted this permission by express or implied authority, that would be sufficient under the extended terms of the policy.

Having held as we have on the matters passed upon, we are further confronted with the duty of passing upon the question as to whether or not the verdict is against the manifest weight of the evidence.

The law requires that a case go to the jury where reasonable minds may differ, but there still remains the duty of the reviewing court to determine whether or not the verdict is against the manifest weight of the evidence.

While the evidence in this case is not as satisfactory as it might have been, we do not feel that it is within the province of a reviewing court to set aside this verdict as manifestly against the weight of the evidence.

Judgment of the court below affirmed, cause remanded for further proceedings.

HORNBECK, PJ, GEIGER, BARNES, JJ, concur.