Snyder *v.* Carlson et al. (Pennsylvania Indemnity Co. Appellant.)

Halwig *v.* Carlson et al. (Pennsylvania Indemnity Co. Appellant.)

Argued March 16, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*R. T. Mutzabaugh,* of *Nash & Mutzabaugh,* for appellant.

*F. J. Woods,* with him *E. G. Potter,* for appellees.

OPINION BY BALDRIGE, J., April 21, 1939:

These three cases were tried and argued together and will be disposed of in one opinion. The plaintiffs recovered judgments against Carl Carlson in actions of trespass for injuries sustained by Bessie C. and George Halwig and for damages to the automobile of Bernard R. Snyder in which the Halwigs were riding.

The Snyder car was struck on the 24th of August, 1935, by an automobile negligently operated by Carl Carlson and owned by Ida M. Bell, who at the time of the accident was not in the car.

Miss Bell had a policy of insurance issued by the appellant garnishee covering her automobile, which contained an omnibus clause. The pertinent portion is found under the title "Additional Insureds," which gives to the parties, other than the insured, protection, and provides, in part, as follows: "(4) Any other person ...... riding in or legally responsible for the use of the described Motor Vehicle, provided and as a condition precedent that such use is with the permission of Named Insured in Warranty No. 1." The policy does not impose a condition that the person driving the car should be acting for, or engaged on the business of, the owner of the car. Any person legally operating the car, with Miss Bell's permission, was covered.

The plaintiffs issued attachment executions on their respective judgments, naming the appellant insurance company as garnishee. Interrogatories were filed by the plaintiffs and the answers thereto by the garnishee denied liability, alleging that Carlson at the time of the accident was driving Miss Bell's car without her knowledge or consent. Verdicts were rendered in the several actions in favor of the plaintiffs and against the appellant. Upon motions for judgment n.o.v. being refused, an appeal was taken in each case.

The sole question for determination is whether there was sufficient evidence to support the finding of the jury

that Carlson had either express or implied permission of the owner to drive the automobile at the time of the accident.

"The necessary permission may be in the form of express or implied affirmative consent or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced": *Brower, to use v. Employers' Liability Assurance Co., Ltd.,* 318 Pa. 440, 444, 177 A. 826. Miss Bell did not drive her own car and employed no one for that purpose. Carlson had lived at her home for thirty years, took his meals there, and it could be inferred from the evidence that when Miss Bell was absent he had charge of the house which was conducted as a tourist home. He had access to the place the keys to the garage and car were kept.

Morris Smith, who taught Carlson to drive, testified that Miss Bell said in his presence when they went to the house and asked permission to use her car: "Carlie, you know you can take this car any time you want to without asking for it." Following this express permission, the car was taken out and used by these two men ten or fifteen times while Carlson was learning to drive. Smith was unable to fix the exact date of the conversation with Miss Bell or the period over which the instructions were given Carlson, but he thought it was in 1934. Kulp, a witness whose deposition was taken and admitted in evidence on the part of the defendants in the original suit, and read in this case, stated that he thought Carlson learned to drive in 1935. The jury could have concluded the lessons were given during that year, not a great while before the collision which is the foundation of this suit. There was other testimony that Carlson, alone and on his own business, on different occasions, was seen driving this car, and Kulp's recollection was that twice Miss Bell was in it when Carlson was driving. In September following the collision, Carlson discussed

with the garage man the repairs needed to the car, ordered them to be made, and after they were completed he took the car away. The number of times that Carlson drove the car, and all the attending circumstances, justified the conclusion that Miss Bell knew and consented to his use of it.

The appellant relies principally on *Powers et al. v. Wells et al.*, 115 Pa. Superior Ct. 549, 176 A. 62. In that case, Wells' employment included driving the insured's car. We held that the evidence was vague and insufficient to show, as contended, that it was the general practice of Wells to operate the car for his own purposes, or that he had permission to use it on the afternoon he was involved in the accident. The Brower case, supra, was decided shortly thereafter and in the majority opinion a broader construction was given to the terms of the policy, which were similar to those in the one before us, than we gave in the Powers case, and in the disposal of this appeal we are bound thereby.

In *Randig v. O'Hara*, 123 Pa. Superior Ct. 251, 187 A. 83, there was proof of a general permission by the insured to her son to operate her car. The insured, however, told the defendant, her son, not to take the car on the day of the accident. We held that under the Brower decision the general authority given to the son to operate the car was not abrogated or suspended so as to take him out of the insurance coverage of the policy, and permitted a recovery.

In our view, the plaintiffs in these cases adduced sufficient evidence to entitle them to go to a jury as to Miss Bell's permitting Carlson to drive her car. These verdicts are conclusive of that question.

Judgments in the several cases are affirmed.