**Edith Pearl TONEY, Plaintiff, Administratrix, etc.,**

**v.**

**Jeannette HENNEY, Executrix, etc., et al., Defendants.**

**Joseph TONEY, Plaintiff,**

**v.**

**Jeannette HENNEY, Executrix, etc., et al., Defendants.**

**Joseph A. WOLBERT, Plaintiff,**

**v.**

**Jeannette HENNEY, Executrix, etc., et al., Defendants.**

**Joseph A. WOLBERT, Administrator, etc., Plaintiffs,**

**v.**

**Jeannette HENNEY, Executrix, etc., et al., Defendants.**

Civ. Nos. 7638–7641.

United States District Court
N. D. Ohio, W. D.

Sept. 24, 1958.

McGregor & Traycik, Flint, Mich., George R. Effler, Toledo, Ohio, for plaintiffs.

Lewis F. Byers, Columbus, Ohio, A. E. Simmons, Wilbur C. Jacobs, Wm. A. Finn, J. G. Jamra, Toledo, Ohio, for defendants.

KLOEB, District Judge.

This action has resolved itself into an action for a declaratory judgment and is based on:

1. The intervening petition of The Buckeye Union Casualty Company for declaratory judgment;

2. The third party complaint of Jeannette Henney, Executrix of the Estate of Alfred J. Henney, Deceased, against State Automobile Mutual Insurance Company; and

3. The several answers and counterclaims filed in connection with said intervening petition and third party complaint.

The primary question is one of the construction and application of certain provisions of an automobile liability insurance policy No. OA691037 issued to Kathleen O. Henney by The Buckeye Union Casualty Company, under date of December 10, 1955, covering a 1953 Cadillac automobile which was driven by her son Alfred J. Henney, at the time of the accident in these cases.

In connection therewith, there is the question of the liability, if any, of State Automobile Mutual Insurance Company to Jeannette Henney, Executrix, under its two certain automobile liability insurance policies issued to Alfred J. Henney, one upon a Mercury convertible and the other upon a Chrysler Imperial automo-

bile, neither of which were involved in the accident in these cases. Under the provisions of State Automobile Mutual Insurance Company's said policies, the extended coverage of the use by insured of any automobile other than the Mercury or Chrysler was excess insurance over any other valid and collectible insurance. As settlement has been made by Jeannette Henney, Executrix, with the plaintiffs in these cases, and the total amount paid under that settlement is less than the bodily injury liability limits of the Buckeye policy, if Buckeye is held liable to Jeanette Henney, Executrix, the Executrix then has no claim against State.

Buckeye contends that it has no liability under its policy for the reasons set forth in its first and third causes of action. Its second cause of action has been withdrawn.

It is alleged in its first cause of action:

"Petitioner further says that on February 28, 1956, prior to the occurrence of the said collision, the right, title and interest of Kathleen O. Henney in and to the said Cadillac automobile was transferred to Jeannette Henney, wife of the said Alfred J. Henney; that notice of said assignment and transfer of ownership was not given to petitioner, and petitioner had no notice or knowledge thereof; and that the said policy was never assigned to the said Jeannette Henney, in accordance with the provisions of Item 23 of the 'Conditions' of said policy as heretofore set forth; and petitioner further says that, by reason of the said assignment and transfer to the said Jeannette Henney, without notice to petitioner herein, said policy became null and void as of the date of said assignment and transfer; and, therefore, coverage was not afforded under said policy to the said Jeannette Henney and/or said Alfred J. Henney."

It is alleged in its third cause of action:

" * * * that, in the event it should be determined that the said Kathleen O. Henney was mentally incompetent on the inception date of said policy but that nevertheless said policy of insurance was valid and in force on and prior to the date of the collision referred to in plaintiff's complaint herein and, should it further be determined that by reason of said mental incompetency the said assignment and transfer was void and of no force and effect, then in that event this petitioner claims that the said Kathleen O. Henney, a widow, by reason of her mental incompetency, was, on and prior to the date of said collision, incapable of giving permission to the said Alfred J. Henney to use and operate the said Cadillac automobile at the time and place said collision occurred; that the said Alfred J. Henney was using and driving said Cadillac automobile at said time and place *without the permission of the said Kathleen O. Henney;* and that, by reason thereof, the said Alfred J. Henney was not an additional insured under the terms of Insuring Agreement III in said policy heretofore set forth, and petitioner is not obligated to defend said action on behalf of Jeannette Henney, as Executrix of the Estate of the said Alfred J. Henney, deceased, nor to pay any judgment that may be rendered therein against her." (Emphasis supplied.)

### Buckeye's First Cause of Action

It is the contention of Henney, Executrix, that the title to Kathleen's Cadillac was not legally assigned or transferred for the reason that she was mentally incompetent and incapable of transacting any business whatsoever after September 4, 1955, and that neither she nor any one purporting to act for her could on February 28, 1956 effectively assign and transfer her title to the Cadillac automobile. In a proceeding in the Probate Court of Franklin County, Ohio, on May 11, 1956, a guardian was appoint-

ed for Kathleen on the ground of mental incompetency, and in that proceeding the Court found that she was the owner of the Cadillac notwithstanding the assignment to Jeannette.

On September 4, 1955, Kathleen O. Henney was herself driving the Cadillac when she had an accident in which a boy was injured, and later in the same day suffered a severe cerebral hemorrhage and became continuously incompetent and incapacitated, as admitted by stipulation and found by the Probate Court of Franklin County, Ohio. Agents of Buckeye investigating this accident learned of this condition and mentioned it in their letters and reports to the Claims Department of Buckeye, so that it is chargeable with notice and knowledge of her condition at the time it issued the policy here, dated December 10, 1955, and accepted the premium therefor.

In the deposition of Jeannette she testified that the purpose of putting the title in her name was not to actually divest Kathleen of the legal ownership of the Cadillac but "so it could be driven and kept in good condition and get plates"; that "it was still always mother's as far as we were concerned". (Henney Dep., pp. 62, 63).

In 29 Am.Jur., Sec. 630, pp. 505, 506, it is stated generally with regard to the effect of a change of title of insured property, without the insurer's consent:

"* * * Generally, any material change in title, although not by alienation, will avoid an insurance contract which provides that any change in the title shall avoid it; but *if the real ownership remains the same, although there is a change in the evidence of title, such change being merely nominal, and not of a nature calculated to diminish the motives of the insured to guard it from loss, the policy is not violated.* Under a provision in a policy that it shall be void if the risk is increased in any manner or the property sold or any change made in the title, or if the property is encumbered or used

for other purposes without consent, a change *of title or encumbrance will not void the policy unless it increases the risk or decreases the security."* (Emphasis supplied.)

It seems to us that the assignment by Alfred to Jeannette of the title certificate to the Cadillac automobile of February 28, 1956 must be considered as void and of no effect as an assignment within the meaning of the policy.

■ It is further contended by Buckeye that even if Kathleen was wholly incompetent on February 28, 1956 and could not then take any steps to divest herself of title to the Cadillac, the new certificate issued to Jeannette cannot now be contradicted by reason of the provisions of the Ohio Certificate of Motor Vehicle Title Act (R.C. § 4505.04), which states:

"No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

"(A) By a certificate of title or a manufacturer's or importer's certificate issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code."

In answer to this argument Henney, Executrix, points out that one of the sections included in the reference to Sections 4505.01 to 4505.19 is Section 4505.-06, which requires that:

"* * * and if a certificate of title has previously been issued for the motor vehicle in this state, it shall be accompanied by said certificate of title *duly assigned,* unless otherwise provided in Sections 4505.-01 to 4505.19, inclusive, of the Revised Code. * * *" (Emphasis supplied),

and that it cannot be said that Kathleen *"duly assigned"* her certificate to Jeannette.

It seems to us this contention is well taken, as it appears undisputed that

Kathleen on the date of the assignment was incapable of assigning the title, either directly or indirectly.

Buckeye also contends that it is not liable on the policy because of a breach of Item 8 of the Declarations of the policy by the transfer and assignment of February 28, 1956. Item 8 represents that "the named insured *is* the sole owner of the automobile". Counsel for Henney, Executrix, contend that this representation applies only to the date of the policy and cite the concurring opinion of Judge Taft in Garlick v. McFarland, 159 Ohio St. 539, 551, 113 N.E.2d 92, which supports this position.

Furthermore, it would seem that this contention of Buckeye is not tenable in the face of our conclusion that the assignment was null and void because of Kathleen's incompetency, and she remained the owner, as found later by the Probate Court of Franklin County, Ohio.

Certainly there was no misrepresentation as to ownership at the time of the issuance of the policy.

Buckeye's Third Cause of Action

Buckeye alleges that should it be determined that Kathleen Henney was mentally incompetent on the inception date of the policy but that nevertheless the policy was valid and in force on and prior to the date of the collision, and should it further be determined that by reason of said mental incompetency said assignment and transfer was void and of no force and effect, then in that event Buckeye claims that Kathleen Henney by reason of her mental incompetency was on and prior to the date of the collision incapable of giving permission to Alfred J. Henney to use and operate the said Cadillac at the time and place of the collision; and that Alfred J. Henney was using and driving said Cadillac at said time and place without the permission of said Kathleen Henney, and that by reason thereof the said Alfred Henney was not an additional insured under the terms of Insuring Agreement III in said policy, and Buckeye is not liable in this action to the estate of Alfred Henney.

It seems to be the law that it is not necessary to show that the permission required under such a policy provision as is involved here was specifically given for the trip which resulted in the accident. Shoup v. Clemans, Ohio App.1939, 31 N. E.2d 103, 106.

Implied permission may be shown by previous use or consent, place of keeping the keys and the car and the like, the relationship of the parties, a course of conduct and circumstantial evidence. (7 Appleman on Insurance, Sec. 4371, p. 186).

In United Services Automobile Ass'n v. Russom, 5 Cir., 1957, 241 F.2d 296, 300, it is said:

"Ohio then fits in with the general principle that whether the named assured authorized the permittee to allow others to use the vehicle is to be measured in a realistic way in which, once established, implied permission has exactly the same significant force as one expressly made with more elaborate formality. * * *"

In Snyder v. Carlson, 1939, 135 Pa. Super. 390, 5 A.2d 588, it is held:

"Under omnibus clause of automobile liability policy, providing, in substance, that policy shall cover any person operating automobile with 'insured's consent,' the necessary permission may be in form of express or implied affirmative consent, or it may result by implication from relationship of parties, or a course of conduct in which parties have mutually acquiesced." (Syl. 1).

In Wise v. Ohio Casualty Ins. Co., D.C. Ky.1951, 96 F.Supp. 380, 383, it is said:

" * * * The implication of the right to use arises from the testimony both of Woods and his wife, showing a course of conduct and relationship between them indicating mutual acquiescence and lack of objection. Thus, as will appear from the statement of the Court of Appeals of the Fourth Circuit in Jordan v. Shelby Mutual Plate Glass & Casualty Co., 142 F.2d 52 and the

Annotation in 5 A.L.R.2d 600–602, and other numerous decisions, a *comprehensive permission is much more directly to be assumed where the automobile insured is for social or non-business purposes than where the relationship of master and servant exists and the car is for business purposes.* In the entrustment of an automobile to another for non-business purposes, there usually exists between the owner and the bailee, the relationship of kinship, friendship or family relationship." (Emphasis supplied.)

In Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 4 Cir., 1953, 208 F.2d 250, 256, the Court says:

"Our own decisions, we think, show a strong tendency toward a liberal interpretation, in favor of the insured, of the 'omnibus clause'. This clause should not be construed and applied, from a purely analytical viewpoint, under a literal interpretation of the words of the policy. The spirit, not the letter, should control. Statutes requiring the insertion of the 'omnibus clause' in automobile liability policies reflect a clear cut policy to protect the public. They should be construed and applied so as to carry out this policy.

"Our case presents a number of questions which must be solved against a broad background of rather intimate social, family and business relations of the persons involved. * * *".

In Brower v. Employers' Liability Assur. Co., 1935, 318 Pa. 440, 177 A. 826, 829, it was said:

"The word 'permission' has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized. That it appears in automobile policies would indicate that any one having permission or color of authority is included within the clause. * * *".

See also Vezolles v. Home Indemnity Co., D.C.Ky.1941, 38 F.Supp. 455, 458, to the same effect.

The testimony shows that prior to the time Kathleen Henney had her stroke and became mentally incompetent on September 4, 1955, her son Alfred had her continuing permission to drive the Cadillac whenever he wished to do so, as shown by the deposition of Jeannette Henney. She testified:

There were three cars for the use of the two families (p. 36) and *each member of the family had a key to each car* (p. 37) and the right to use all of them at any time (pp. 43 and 45). The use by any member of these two families of any of these cars depended "upon what was most convenient or what we were going to do, or what car was laid up at the moment" (p. 38). This arrangement existed not only during Ralph Henney's life but continued after his death and down to the time of Al's death (p. 38). While Al had the right to use his mother's Cadillac at any time, he preferred to use his own cars (p. 43). There were times, however, when he and Jeannette would need the Cadillac because their own cars were being serviced (p. 44) and it was always available to them without limitation as to use (p. 58).

Kathleen's permission to Al to drive her Cadillac was never revoked by her (pp. 38, 45).

It would seem clear that Alfred Henney had Kathleen's permission to use the Cadillac car prior to September 4, 1955, the date of her accident. This fact does not seem to be questioned by counsel for Buckeye, but Buckeye does contend that any such permission given Alfred to use the Cadillac terminated on September 4, 1955 because of her incompetency, and that for the same reason she could not give him such permission at any time thereafter.

Unless the incompetency of Kathleen on September 4, 1955 ipso facto

terminated the permission of Alfred to use the Cadillac, that permission continued until the accident, unless it was ended before that time by operation of law. No authority to the contrary has been cited. Cases cited to the effect that death terminates such permission are not, in our opinion, applicable to these cases.

We are inclined to believe, from the facts and circumstances in these cases, and the testimony of Jeannette in her deposition, that the purpose of the assignment, irregular and indefensible though it may be, was merely to enable them to obtain new license plates and to continue to occasionally operate the Cadillac from time to time as they had before so as to keep it in good running condition for the possible future use of Kathleen, and that there was no fraudulent intent on the part of Alfred or Jeannette or any intention to convert the Cadillac to their own use. To hold otherwise would be entirely inconsistent with the character of the parties, their relations to one another and their course of conduct.

Alfred had a 1956 Chrysler Imperial for his own use at the time of the accident, but he apparently continued to occasionally drive the Cadillac after September 4, 1955, as he had previously, up until the time of the accident. This seems to have been with the knowledge of Buckeye through its agents and Buckeye certainly had knowledge of the continuing incompetency of Kathleen through the reports of its agents as shown by the Albers and Hart letters, reports and depositions.

Buckeye, if it had wished to do so, could have terminated the policy any time after it was issued and before the accident and have given opportunity to the parties interested to secure new coverage, but it did not do so. It would seem too late to wait until after the accident happened and its liability accrued for it to then attempt to cancel the policy.

### Findings of Fact

The Court finds:

1. The accident out of which these actions grew occurred on April 7, 1956, on Ohio State Route No. 2, in Ottawa County, Ohio, apparently through the carelessness of Alfred J. Henney, who was driving the 1953 Cadillac at the time, and resulted in his death.

2. On December 10, 1955, Buckeye issued its automobile liability insurance policy involved here to Kathleen O. Henney, the named insured, covering the 1953 Cadillac automobile, then owned by her. Among other provisions, the policy contained the following:

"1. Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

\*    \*    \*    \*    \*    \*

"III. Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. \*    \*

\*    \*    \*    \*    \*    \*

"Conditions.

23. Assignment. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon: \*    \*    \* ".

3. The members of the Henney family in 1953 were Ralph Henney, Alfred's father, who died in October, 1953, Kathleen O. Henney, his widow, Alfred Henney, who was the driver of the Cadillac automobile at the time of the colli-

sion on April 7, 1956, and Jeannette Henney, Alfred's widow.

4. For some time before the death of the father, he had three automobiles titled in his name: the Cadillac, a Mercury and a Chrysler Imperial. Each of the four Henneys had a set of keys for each of the cars and each one was free to use whatever car he or she desired, by agreement or common consent. Ralph Henney also had a checking account on which each of the members of the family could and did write checks.

5. The Henney homestead was located at 2395 Kensington Road, Upper Arlington, near Columbus, Ohio. From 1949 or 1950 until Alfred's death in 1956 Alfred and Jeannette and their children lived at this address. About the time Alfred and his family moved in his parents moved out and into an apartment at 1997 North Star Road, about one mile distant, where Kathleen Henney has since resided.

6. When the two branches of the family set up these separate dwelling places, the Mercury and Chrysler were garaged at the Kensington Road address and the Cadillac at the North Star apartment, but the practice and custom of each member of the family using any one of the three cars continued.

7. Ralph Henney died in October, 1953. Alfred handled the administration of his father's estate and continued his father's role of taking care of the business affairs of Kathleen. By order of the Probate Court the title of the Cadillac was transferred to Kathleen. The Mercury had previously been transferred to Alfred, and the 1951 Chrysler to Jeannette, which later was turned in on a 1956 Chrysler purchased by Alfred. The death of Ralph did not effect any substantial change in the prior custom as to the common use of the automobiles and it continued as before.

8. Under date of December 10, 1953, Buckeye issued to Kathleen its policy covering the Cadillac, which was renewed December 10, 1954 and December 10, 1955, all of them being written by Herbert Albers, Agent for Buckeye.

9. On September 4, 1955, Kathleen Henney, while driving the Cadillac, had an accident in which she injured a young boy, and on the same day she suffered a stroke. From that time on she was continuously incompetent and incapacitated, uncommunicative and unable to take care of herself and her financial and property interests, has been constantly attended by a nurse, and from that time on until Alfred's accident on April 7, 1956 he had complete charge of his mother's affairs (Jeannette Henney Dep., p. 57).

10. October 26, 1955, Fred Albers, a brother of Herbert Albers, and his associate in the insurance agency business, wrote to the Buckeye's Columbus claims' office advising it of Kathleen's accident on September 4, 1955, and of Kathleen's stroke and critical and uncommunicative condition. He received the information about the accident by telephone from Alfred on October 25, 1955 (Herbert Albers' Dep., Ex. B-8).

11. October 31, 1955, John Hart, an adjuster in Buckeye's Columbus claims' office, began his investigation of the accident on September 4, 1955 of Kathleen Henney. His initial report of his investigation, dated December 2, 1955, indicates that he had been unable to talk to Kathleen concerning the circumstances surrounding the accident because of her being unconscious and incoherent, and that he obtained most of his information concerning her condition from her son Alfred. From the time of this report Buckeye was charged with knowledge of Kathleen's incompetency and incapacity, and that there was very little prospect of her ever recovering from the effects of the stroke or being able to drive the Cadillac. Notwithstanding, it thereafter issued the policy involved here, dated December 10, 1955, and accepted the premium therefor, but made no attempt to cancel the policy until after the accident on April 7, 1956.

12. About December 1, 1955, the Cadillac was moved to the Kensington

Road residence where Alfred and Jeannette then lived, and the policy of insurance was mailed to that address by Buckeye. Each member of the family continued to have a set of keys to each of the three cars. The express purpose of moving the Cadillac to the Kensington Road residence was to make it more convenient for Alfred and Jeannette to use it occasionally and in that way keep it in running condition. (Jeannette Henney Dep., pp. 21; 45, 46).

13. After his mother's accident on September 4, 1955, Alfred Henney and his wife continued to have the same three cars at their disposal as prior thereto, i. e., the 1953 Cadillac in the name of his mother, the Mercury and the 1951 Chrysler, which latter, on February 8, 1956, was traded in on a 1956 Chrysler by Alfred. During the time following Kathleen's accident the Cadillac was driven from time to time by Alfred or his wife.

14. At the time of the accident on April 7, 1956, which resulted in the death of Alfred, State Auto had in effect two policies of liability insurance issued to Alfred Henney, one on the Mercury and the other on the 1956 Chrysler, both of which cars were titled at that time in his name.

Conclusions of Law

The Court finds as a matter of law:

(1) The Buckeye Union Casualty Company is liable to Henney, Executrix, under its policy of insurance No. OA691037, issued to Kathleen O. Henney, dated December 10, 1955, for the amount paid by her in settlement of the four personal injury cases, Nos. 7638, 7639, 7640 and 7641, as above entitled, and for such other damages and expenses as may be hereinafter determined by the Court or agreed upon by the parties.

(2) There is no liability, in view of the above conclusion, upon the policies of insurance issued by State Automobile Mutual Insurance Company to Alfred J. Henney upon the Mercury and Chrysler automobiles owned by him at the time of the accident involved in these cases.

(3) The assignment dated February 28, 1956 of the certificate of title to Kathleen O. Henney to Jeannette Henney, for the 1953 Cadillac, made by Alfred J. Henney in the name of his mother, while she was incompetent and incapacitated, was void and did not operate to transfer or assign the title.

(4) Kathleen O. Henney, on and after February 28, 1956, and up to the time of the accident on April 7, 1956, was the legal owner of the 1953 Cadillac, and covered by the policy of Buckeye sued upon in these cases.

(5) Alfred J. Henney, at the time of his accident, on April 7, 1956, was driving the 1953 Cadillac with the permission of his mother, Kathleen O. Henney, under authority of the mutual agreement which existed between his mother, his wife and himself prior to September 4, 1955, under which each had permission to use any of the three cars which they owned at any time, and such permission was not terminated by her incompetency on that date, but continued until the time of his accident, on April 7, 1956.

Counsel for Jeannette Henney, Executrix, may prepare and submit to the Court an order drawn in accordance with the foregoing Memorandum Opinion.