## Bash v. Hittman

*Smith & Mountenay,* for plaintiff.

*Achey & Power,* for garnishee.

BIESTER, P. J., September 23, 1960.—On January 29, 1953, one Harry Hittman was the owner of an automobile involved in an accident with the above-named plaintiff, Ignatius Francis Bash. At the time of the accident, the vehicle in question was being operated by William Dougherty, 15 years of age and an unlicensed driver, he having been permitted to drive the vehicle by Joan Hittman, daughter of the owner, also 15 years of age and an unlicensed operator.

Plaintiff instituted an action in trespass against Joan Hittman and William Dougherty, their respective fathers being appointed as guardians. Judgment was eventually entered against defendants for failure to appear and answer, and, in due course, damages were assessed by a jury and judgment entered on the verdict. The insurance carrier for Harry Hittman, having refused to recognize any coverage under the terms of its policy, an action of attachment execution was issued against Joan, the daughter, and the insurance company, naming the latter as garnishee.

Following a board of arbitration award in favor of plaintiff, the garnishee appealed and the matter came on for trial before the undersigned. At the close of plaintiff's case, defendant moved for a compulsory nonsuit and the motion was granted. After a careful examination of the law as applied to the evidence adduced at the trial, we have concluded that the trial judge's action in allowing the nonsuit was in error.

There are two primary questions involved, one being whether there was sufficient evidence to go to the jury on the question of implied permission granted by the father to the daughter to use the car, and secondly, if there was such implied permission, whether under all of the circumstances, Joan was an additional in-

sured under the terms of the insurance policy, which contained the following omnibus clause:

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is by the named insured or with his permission."

At the trial of the case, the evidence disclosed that the father, who was then suffering from a brain tumor, had, about three months prior to the accident, instructed his daughter in the operation of the vehicle. In addition, the daughter had used the car on five or six occasions for the purpose of taking her friends to their homes, or for the purpose of going to and from her school. On these occasions the father was not with her. Her precise language in reference to this situation, when asked whether she had sought consent of her father before using the vehicle, is revealing. It is as follows:

"I never asked daddy. I said, 'Daddy, I am going to take my friends home.' I am going here, and he always said 'Okay.' He gave me the permission, yes."

Furthermore, there was evidence that the father never told the daughter not to use the car without seeking his permission; the keys to the vehicle were either in the daughter's possession or readily available for her use; the father never told the daughter not to permit someone else to operate the vehicle; the daughter had used the car on more than one occasion, without advising her father in advance that she intended to use it.

On the date of the accident, without the express consent or knowledge of the father, Joan took the car for

the purpose of going to school. She then watched a basketball game at the school and, in the course of taking certain friends to their respective homes, she permitted Dougherty to drive. The father did not know Dougherty personally and, of course, had not authorized him to operate the vehicle at the time of the accident.

Although a number of cases have been decided by our appellate courts dealing with similar problems, we have found no case which expressly rules the case before us. Nevertheless, from these cases we can extract certain principles of the law, which are influential and have guided us in the position we take. These principles may be enunciated as follows: In order for liability to accrue to the insurance carrier under an omnibus clause of this type, it is essential that there be sufficient evidence to justify a jury in finding that permission, either express or implied, to use the car has been granted. The necessary permission may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced. Brower, to use, v. Employers' Liability Assurance Company, Ltd., 318 Pa. 440, 444; Snyder v. Carlson, 135 Pa. Superior Ct. 390, 392; Beatty v. Hoff, 382 Pa. 173, 176.

The term "permission" has a negative rather than an affirmative implication; that is, a permitted act may be one not specifically prohibited as contrasted to an act affirmatively and specifically authorized: Brown v. Employers' Liability Assurance Company, Ltd., supra; Conrad v. Duffin, 158 Pa. Superior Ct. 305. The term "actual use" really means "the particular use" and relates only to the use of the automobile, and not to the identity of the person actually operating it: Snap-on Tools Corporation v. Penna. Threshermen and Farmers' Mutual Casualty Insurance Co., 65

Dauph. 209, 220; Brown v. Kennedy, 141 Ohio St. 457, 48 N. E. 2d 857, 859; Conrad v. Duffin, supra; Laroche v. Farm Bureau Mutual Automobile Insurance Co., 335 Pa. 478, 483. The course of conduct may be so deeply imbedded and the relationship of the party such that implied consent may be inferred even in the face of an express prohibition to use the vehicle at the time and place at which the accident occurred: Randig v. O'Hara, 123 Pa. Superior Ct. 251.

Applying these principles to the facts in the present case and construing the testimony as we are required to do by giving plaintiff the benefit of every fact and every reasonable inference of fact arising from the evidence (Sloss v. Greenberger, 396 Pa. 353, 354; Seburn v. Luzerne & Carbon County Motor Transit Company, 394 Pa. 577; Finnin v. Neubert, 378 Pa. 40), it is our conclusion that the jury should have been permitted to determine whether the course of conduct indulged in by the parent and child justified a finding that on the day in question Joan was using the car with the implied consent and permission of her father.

Counsel for the insurance company argues that even if we should conclude that there was sufficient evidence to justify a finding of implied permission, nevertheless this implied permission could not possibly include the right of the permittee to authorize a third party to operate the vehicle. Although this proposition may be correct, it is of no importance in deciding the issue. It is our view that if the car was used by Joan with her father's implied permission she came within the terms of the coverage, for she was using the car, although she was not operating it. As was said in Maryland Casualty Company v. Marshbank, 226 F. 2d 637, 639, construing the pertinent Pennsylvania law in a similar case:

"The fallacy in the . . . position is that the words 'use' and 'operation', which it seeks to equate as synonymous are in this setting words of quite different meaning. For the 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him involves his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or another.

"It is only the actual or particular use of the automobile at the time of the accident by the individual who is claiming to be an additional insured that he must show to have been with the permission of a named insured if he is to come within the definition of the policy here involved".

Other cases of like import are Glens Falls Indemnity Company v. Zurn, 87 F. 2d 988, Brown v. Kennedy, supra, Snapon Tools Corporation v. Penna. Threshermen and Farmers' Mutual Casualty Insurance Company, supra.

Defendants cite as opposing this proposition the cases of Volk v. Cacchione, 395 Pa. 636, and Aetna Casualty & Surety Company v. DeMaison, 213 F. 2d 831. These cases are distinguishable and do not conflict with the position we have taken.

In Volk v. Cacchione the father-owner permitted his son to use the automobile for the purpose of attending a dance. At the dance, Cacchione asked the son to permit him, Cacchione, to have the automobile for the purpose of taking a young lady to her home. The son consented. Plaintiff contended that the evidence disclosed a course of conduct from which the jury could find that Cacchione was driving with the implied permission of the father. There was a complete lack of evidence to sustain this position. In addition, the son

was not in the automobile at the time of the accident and could in no sense have been said to have been using it. In the DeMaison case the named insured had given his son permission to use his automobile to go to a moving picture theatre in Jenkintown. The son drove then to an inn in Ardsley, three miles beyond Jenkintown, there meeting Mr. and Mrs. DeMaison, who joined him in a further excursion to a diner at Willow Grove, still farther beyond Jenkintown. During the course of the latter trip, the son turned the operation of the car over to Mrs. DeMaison and while she was driving an accident occurred. This case is not apposite, first because there was a departure from the authority of the use, in that the son was using the car for purposes not contemplated by the permission and secondly, because it was there the contention that Mrs. DeMaison, the operator, was an additional assured, a position which could not be sustained either in that case or the case before us. As was said in Maryland Casualty Company v. Marshbank, page 640, supra:

"It will be seen that the distinction between the use and operation of the automobile, which is crucial in this case, was of no legal significance in the DeMaison case."

For the reasons heretofore set forth, the court makes the following

### Order

And now, to wit, September 23, 1960, the motion to take off the nonsuit is hereby sustained and allowed and a new trial granted.